Filed 9/26/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROBERT FINDLETON,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>COYOTE VALLEY BAND OF POMO INDIANS,<br><br>     Defendant and Appellant. | A150444<br><br>(Mendocino County Super. Ct. No. SCUKCVG-1259929)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the published opinion filed on September 25, 2018, be modified as follows:

The case caption is corrected to read:

ROBERT FINDLETON,

     Plaintiff and Respondent,

v.

COYOTE VALLEY BAND OF POMO INDIANS,

     Defendant and Appellant.

There is no change in judgment.


Dated: _____          _____

                                      Kline, P.J.

1

Trial Court:   Mendocino County Superior Court

Trial Judge:   Hon. Richard J. Henderson

Counsel:

Ceiba Legal and Little Fawn Boland; Brady & Vinding and Michael V. Brady for Defendant and Appellant.

Timothy W. Pemberton for Plaintiff and Respondent.

Filed 9/25/18 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROBERT FINDLETON,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>COYOTE VALLEY BAND OF POMO INDIANS,<br><br>     Defendant and Respondent. | A150444<br><br>(Mendocino County<br>Super. Ct. No. SCUKCVG-1259929) |

This is our third appeal concerning contractor Robert Findleton's attempts to enforce arbitration clauses in agreements he entered into with the Coyote Valley Band of Pomo Indians (the Tribe), which failed to pay him for work he performed for the Tribe. In the first appeal, we held the Tribe had waived its sovereign immunity for purposes of arbitrating the contract disputes and that the waiver extended to judicial enforcement of the right to arbitrate and of any arbitration award. (*Findleton v. Coyote Band of Pomo Indians* (2016) 1 Cal.App.5th 1194, 1217 (*Findleton I*).) We reversed the superior court's contrary ruling and remanded the case for further proceedings. In the second appeal, we reversed the superior court's grant of the Tribe's motion for prevailing party attorney fees and costs of $66,733.50 under the Tribal Code and Civil Code section 1717 because, in view of our ruling in *Findleton I*, the Tribe was not a prevailing party.

On remand, Findleton filed a motion to compel mediation and arbitration and a motion for an award of the attorney fees Findleton incurred on appeal. In response, the Tribe did not oppose the fee motion on the merits, but instead requested that the superior court defer ruling on the motions until the Tribe filed a demurrer challenging the court's jurisdiction. The superior court rejected the Tribe's request for a stay as to the attorney

1

fee motion, granted the fee motion and awarded Findleton costs of $4,591.79 and attorney fees of $28,148.75.  The Tribe timely appealed the award of fees and costs.  We affirm.

## BACKGROUND

The facts concerning the underlying contract dispute between Findleton and the Tribe are summarized in our opinion in *Findleton I*, and we will not repeat them here. We set forth here only the procedural history of this litigation that is pertinent to the issues raised in this appeal.

After attempting to persuade the Tribe to pay him for work and services provided under two agreements, known as the "Construction Agreement" and the "Rental Contract," as amended by a document known as the "Third Amendment," Findleton requested that the Tribe mediate and arbitrate pursuant to clauses in the agreements providing for these forms of dispute resolution.  The Tribe failed to respond to those requests, and Findleton thereafter filed a petition on March 23, 2012, in the Mendocino County Superior Court to compel mediation and arbitration.

The Tribe moved to quash service of summons and to dismiss for lack of jurisdiction, claiming it had not waived its sovereign immunity or consented to suit in state court and that Findleton had failed to exhaust tribal administrative remedies.  After extensive discovery and briefing, the superior court ruled on the motion in May 2014, holding the Tribe had not waived its sovereign immunity.  The Tribe thereafter filed a motion for attorney fees it had incurred in defending against Findleton's petition, which motion the superior court granted in November 2014.  Findleton appealed both rulings, and in August 2016 we issued our opinions, reversing the superior court's jurisdictional decision and remanding the case to the superior court for further proceedings, on the ground the Tribe had waived its sovereign immunity.  We also reversed the award of fees to the Tribe, because in view of our holding on sovereign immunity, it was not a prevailing party.

On remand, Findleton again filed a petition to compel mediation and arbitration and filed a motion for an award of contractual attorney fees he had incurred in the prior

2

appellate proceedings.  The Tribe opposed both motions.  It did not file substantive opposition to the fee motion, however.  Instead, it merely requested that the superior court defer ruling on both motions until it resolved a demurrer the Tribe planned to file, in which the Tribe said it would argue the state court lacked jurisdiction because it had delegated its judicial powers to a tribal court and ruling on the fee motion would interfere with the Tribe's sovereignty.

The superior court vacated its prior order granting fees to the Tribe and granted Findleton's motion for the fees he incurred to enforce his right to arbitrate.  The Tribe timely appealed.

**DISCUSSION**

On appeal, the Tribe raises three arguments, which we address in turn.

**I.**

***Superior Court Jurisdiction to Award Attorney Fees Findleton Incurred to Enforce His Right to Arbitrate***

First, the Tribe contends only one of the two agreements between Findleton and the Tribe (the Rental Agreement) authorizes attorney fees, but that the Tribe did not waive its sovereign immunity as to claims under that agreement, and there is not yet a prevailing party within the meaning of that agreement's fee clause.  As Findleton points out, the Tribe "did not advance any contention" in the superior court "about the scope or effect of the attorney fees clause in the Rental Agreement or the amount of the fees"; nor did it claim Findleton was not a prevailing party.

The Tribe waived these issues by failing to raise them in the superior court.  It is well established that appellate courts will ordinarily not consider errors that "could have been, but were not raised below." (*In re Marriage of Falcone* (2008) 164 Cal.App.4th 814, 826; Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2017) ¶ 8:229, p. 8-174.)  The rule applies to defenses as well as theories of liability, and to a "new theory for or against recovery" of attorney fees.  (Eisenberg, ¶¶ 8:231, 8:233, p. 8-175.)  "The policy behind the rule is fairness." (*Marriage of Falcone*, at p. 826.)  "Appellate courts are loath to reverse a judgment on grounds that the

3

opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." (*JRS Products, Inc. v. Matsushita Elec. Corp. of America* (2004) 115 Cal.App.4th 168, 178.) These rules are no less applicable to Native American tribes than to other parties. (See, e.g., *C & L Enterprises v. Citizen Band Potawatomi Tribe of Okla.* (2001) 532 U.S. 411, 423, fn. 6 [declining to consider tribe's claim that members of tribe who executed contract containing arbitration clause and waiving sovereign immunity lacked authority where issues were not aired in lower courts].)

The Tribe urges this court to "exercise its discretion and consider" the arguments it has raised for the first time on appeal, contending they are "purely a matter of applying the law to undisputed facts." We are not persuaded.

The issues raised by the Tribe's belated arguments are not purely legal. For example, Findleton points out that the Rental Contract, the Construction Contract and the Third Amendment all relate to the Tribe's casino and infrastructure development project and that the Construction Contract addresses charges for equipment rental (which is the subject of the Rental Contract), and argues that pursuant to Civil Code section 1654 the three agreements should be "considered as one agreement," and their provisions should be treated as "merge[d]." Responding to this argument, the Tribe concedes "it is a question of fact whether multiple contracts are intended to be elements of a single transaction under section 1642" (see *Pilcher v. Wheeler* (1992) 2 Cal.App.4th 352, 355), but argues the relevant facts here "are clear." But this misses the point. By failing to raise this factual issue below and failing to contest Findleton's substantive right to claim fees under the Rental Agreement, the Tribe deprived Findleton of the opportunity of introducing whatever extrinsic evidence Findleton might have had at his disposal on the integration issue, and deprived the superior court of the opportunity to address the factual

issue in the first instance. In addition, the Tribe relies on assertions of fact that Findleton disputes.[1] Findleton also contends that "the exact same amount of fees and costs would have been incurred even if the attorney fee provision covered only the Rental Agreement because all the research, briefing and appearances in the two earlier appeals would have been the same." Given the fact-intensive inquiry entailed in whether and how the agreements should be interpreted and whether there should have been any allocation of the fees on appeal, consideration of these issues for the first time on appeal would be unfair to Findleton and to the superior court. Thus, we reject the Tribe's request that we exercise our discretion to address these issues because they are not pure questions of law.

Next, the Tribe argues the sovereign immunity issue "call[s] into question the Superior Court's jurisdiction over the matter" and thus falls within "a recognized exception to the rule that new arguments will not be considered on appeal." Generally, it is true that failure to challenge jurisdiction does not waive the issue. However, that does not mean a party may relitigate jurisdictional issues without regard to prior decisions in the case addressing those very same issues. As Findleton points out, "[l]itigants are not free to continually reinvent their position on legal issues that have been resolved against them by an appellate court." (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 312, disapproved on other grounds in *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637.) "The doctrine of the law of the case provides

---

[1] For example, it argues the Rental Contract and the Construction Contract are between the Tribe and "two entirely different entities," whereas Findleton argues both "entities" on whose behalf he signed the contracts were "merely dba's of Findleton." (See *Findleton I*, *supra*, 1 Cal.App.5th at p. 1198, 1199–2000 [describing Terre Construction and On-Site Equipment Rental as dbas of Findleton].) The Tribe characterizes the agreements as "stand alone" contracts "for different services and with different terms." However, Findleton points out that both agreements are signed by him individually, the Construction Contract describes the transaction embodied in the Rental Contract, and the Rental Contract's purpose was to reduce the Tribe's cost for the use of equipment used to complete the construction that was the subject of the Construction Contract by having the Tribe lease the equipment from Findleton (dba On-Site) and thereby avoiding state and local taxes and charging its own construction tax on equipment rental instead. (See *id.* at p. 1200.)

that ' " 'the decision of the case[] conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent trial or appeal in the same case.' " ' " (*Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292, 304.)  Law of the case precludes relitigation of an appellate decision that a court has jurisdiction.  (*Gore v. Bingaman* (1942) 20 Cal.2d 118, 120–121; *People v. Shuey* (1975) 13 Cal.3d 835, 842, abrogated on other grounds as stated in *People v. Bennett* (1998) 17 Cal.4th 373, 389–390, fn. 5.)

The Tribe rests its current sovereign immunity position in part on the contention that it did not waive its sovereign immunity as to the Rental Contract, which contains the attorney fee clause under which fees were awarded, and that the superior court therefore lacked jurisdiction to award fees under that contract.  The problem with this argument is that we already decided in *Findleton I* that the Tribe waived its sovereign immunity not only as to the Construction Agreement but also as to the Rental Contract, and that decision is now law of the case.  In *Findleton I*, we addressed Findleton's appeal from the superior court's denial of his motion to compel arbitration under the arbitration clauses of the Construction Agreement and the Rental Contract.  (*Findleton I*, *supra*, 1 Cal.App.5th at pp. 1202–1203.)  We held that the General Council of the Tribe, in two resolutions, validly delegated to the Tribal Council the authority to waive the Tribe's sovereign immunity, and that the Tribal Council, by adopting a further resolution, waived that immunity.  (*Id*. at pp. 1214, 1216–1217.)  We recognized the waiver was limited, but held it extended "to arbitration of disputes regarding *those agreements*" and "to judicial enforcement of the right to arbitrate and of any arbitration award, as indicated by the arbitration provision of *the agreements*." (*Id*. at p. 1217, italics added.)  The Tribe is barred by law of the case from arguing that it did not waive its sovereign immunity with respect to the Rental Contract.

The Tribe also argues that the superior court was not authorized "to take any action at all, because the waiver language expressly repudiated state court jurisdiction." This argument, too, is barred by law of the case because in the prior appeal we reversed the superior court's grant of the motion to quash for lack of jurisdiction and remanded the

6

case to the superior court for further proceedings. We necessarily decided that the Tribe waived its sovereign immunity *and thereby conferred jurisdiction on the superior court* (as well as the state appellate courts)—not to resolve the underlying dispute, but *to enforce the arbitration clauses* in the agreements. (*Findleton I*, *supra*, 1 Cal.App.5th at p. 1218.) The Tribe is barred from rearguing the issue.

The Tribe makes one further argument concerning sovereign immunity and jurisdiction. Arguing that our prior decision addressed only "the issue of whether a waiver of immunity exists" and not "the *scope* of the waiver (italics added),"[2] it contends its waiver of sovereign immunity does not extend to, or afford the superior court jurisdiction, to award attorney fees to Findleton. The Tribe is partially correct.

As we have discussed, we addressed the scope of the waiver in *Findleton I* to the extent we held it encompassed state court enforcement of the right to arbitrate disputes under the agreements and state court enforcement of any arbitration award. However, the parties did not raise in *Findleton I*, and we had no occasion to decide, whether judicial enforcement of arbitration included a potential motion by Findleton for attorney fees. Unlike the Tribe's other jurisdiction-related arguments, this one is not barred by the law of the case, and we therefore must resolve it here.

Fortunately, its resolution is not difficult. The issue is narrow; Findleton sought and the superior court awarded only the fees Findleton incurred in prosecuting the first appeal, in which he sought to enforce his right to arbitrate. In *Findleton I*, we held the Tribe's waiver of sovereign immunity encompassed judicial enforcement of Findleton's contractual right to arbitrate. Judicial enforcement of the right to arbitrate includes awarding fees specifically incurred to enforce that right.[3] By adopting the Tribal

---

[2] In the second appeal, we reversed the superior court's award of attorney fees to the Tribe, holding it was not a prevailing party.

[3] There must, of course, be a basis for such fees, such as a statute or contract. Here, there was a contract provision allowing for fees, and the Tribe did not contest Findleton's showing in the superior court that the agreements related to the same transaction and the fee provision thus permitted recovery of these fees. As we have

7

Resolution and thereby consenting to judicial enforcement of the right to arbitrate in any court having jurisdiction, the Tribe waived its sovereign immunity as to attorney fees incurred in enforcing that right and conferred on the state courts jurisdiction to award such fees.[4]

For the foregoing reasons, we reject the Tribe's contention that the superior court lacked jurisdiction to rule on Findleton's motion for attorney fees, and hold that it waived sovereign immunity as to the fees Findleton incurred to enforce his right to arbitrate.

## II.

### *The Tribe's Contention That Comity Required the Superior Court to Abstain from Making Further Rulings*

The Tribe next argues that the superior court erred in failing to abstain from issuing any further rulings after we remanded the case to that court. It relies on *Iowa Mutual Ins. Co. v. LaPlante* (1987) 480 U.S. 9 (*LaPlante*), in which the Supreme Court held that federal policy supporting tribal self-government requires federal courts, as a matter of comity, to stay their hands to give tribal courts a full opportunity to first determine their own jurisdiction. (*Id*. at pp. 15–16.) The court described this rule as one of exhaustion of remedies, stating "tribal remedies [must] be exhausted before the question is addressed by the District Court." (*Id*. at p. 15.) *LaPlante* involved a case based on federal diversity jurisdiction. (*Id*. at p. 11.) The tribal remedy exhaustion rule it applied was first articulated in *National Farmers Union Ins. Cos. v. Crow Tribe* (1985) 471 U.S. 845, 856–857, a case based on federal question jurisdiction.

---

already held, the Tribe waived any argument to the contrary by failing to raise it in the superior court.

[4] Having sought an award of fees in the superior court, invoking both a tribal ordinance and the Rental Contract coupled with section 1717 of the Code of Civil Procedure, the Tribe arguably placed jurisdiction over the issue of attorney fees in that court. However, since Findleton does not argue the Tribe waived immunity as to the issue of fees by filing its own motion for fees in the superior court and invoking the contractual fee provision, we do not address that issue.

The Tribe has not demonstrated that tribal remedy exhaustion was required here.[5] Although there is some support in the law that has been cited to us that tribal court proceedings need not necessarily already be *pending* before the exhaustion principles premised on tribal sovereignty come in to play (see, e.g., *Crawford v. Genuine Parts Co.* (9th Cir. 1991) 947 F.2d 1405, 1407), Findleton cites several cases holding that exhaustion of tribal court remedies is not required when no tribal court *existed* at the time the action was commenced. We find these cases persuasive, and applicable here.[6]

In *Krempel v. Prairie Island Indian Community* (8th Cir. 1997) 125 F.3d 621 (*Krempel*), the plaintiff who had been employed by a tribe sued the tribe in state court for sexual harassment, discrimination and other employment-related claims. (*Id*. at p. 622.) The tribe removed the case to federal court and moved to dismiss for failure to exhaust tribal remedies. (*Ibid*.) The district court granted the motion and dismissed the case, reasoning that the development of the tribal court system after the case was filed weighed in favor of tribal court exhaustion. (*Id*. at p. 623.)

The Eighth Circuit reversed, because when the case was filed no tribal court existed and the tribal court did not become fully operational until more than two months after removal. (*Krempel*, *supra*, 125 F.3d at p. 623. ) It explained, "The Supreme Court has required exhaustion of '*available* tribal remedies *before instituting* suit.' [*LaPlante*], 480 U.S. at 19, 107 S.Ct. at 978 (our emphasis)." (*Ibid*.) Recognizing "tribal sovereignty and the resultant need to exhaust cases in tribal court," the court "deem[ed] it inherently unfair to a plaintiff to require exhaustion in a court that was not operational

---

[5] In addition, neither *LaPlante* nor any other authority the Tribe cites supports its even broader contention that tribal court jurisdiction over this dispute is "exclusive."

[6] Our conclusion makes it unnecessary to decide other questions such as whether the comity doctrine articulated in the federal cases applies to state courts, and whether the comity doctrine applies to petitions to compel arbitration, as opposed to complaints filed in courts invoking their jurisdiction to decide cases on the merits. The latter issue is not addressed by either party, and neither cites any authority on the issue. (See *Gaming World Int. v. White Earth Chippewa Indians* (8th Cir. 2003) 317 F.3d 840, 851 [noting several circuits held exhaustion is required before seeking court order to compel arbitration].)

until after the claim was filed." (*Ibid.*)  Further, the court observed, "the application of the exhaustion doctrine depends on the purposes of exhaustion being served," and "[o]ne of the main purposes of the exhaustion requirement . . . is the principle of judicial economy." (*Ibid.*)  It concluded that principle would not be served in the case before it. "As much as tribal exhaustion might have been desirable in the initial stages of this suit, to require a plaintiff to turn back the clock and exhaust previously unavailable remedies is contrary to judicial efficiency and prejudicial to an individual who brings suit in a forum available for immediate resolution of his claim." (*Ibid*.)

The court also reasoned that the Supreme Court had analogized the doctrine of exhaustion to that of abstention, under which a "district court must determine whether 'the opportunity to raise and have timely decided' before a state tribunal was available to the plaintiff when he brought his federal suit," and if the state tribunal is deemed inadequate, abstention is not required. (*Krempel*, *supra*, 125 F.3d at p. 623.)  By analogy, it concluded, "Obviously, to urge that a plaintiff must exhaust his tribal remedies at a time when a tribal court does not exist would, indeed, inject a futile requirement. Although the district court did not require this, its post facto reasoning would have a similar effect.  Under the circumstances, we hold as a matter of law that Krempel, who had filed a timely claim in an existing forum, was not required to exhaust tribal remedies at a later time when the tribal court came into existence." (*Id*. at p. 624.)

Findleton also cites decisions from the Ninth and Fifth Circuits to the same effect. (See *Johnson v. Gila River Indian Community* (9th Cir. 1999) 174 F.3d 1032, 1036 [error to dismiss plaintiff's claim on exhaustion grounds where there was genuine question whether functioning tribal court existed at time complaint was filed and thus exhausting would be futile]; *Comstock Oil & Gas Inc. v. Alabama and Coushatta Indian Tribes* (5th Cir. 2001) 261 F.3d 567, 572–573 [affirming decision that plaintiffs were not required to exhaust tribal remedies before filing federal court action where no tribal court properly existed at time].)

This case falls squarely within the reasoning of *Krempel*.  Here, there was no evidence before the trial court indicating there was a tribal court in existence in 2012

10

when Findleton first filed his petition to compel arbitration in the superior court,[7] and Findleton contends there was still was no functioning tribal court even five years later, well after he had renewed his request by moving to compel arbitration after we had reversed the earlier dismissal and remanded the case to the superior court. Findleton's petition thus did not interfere with the Tribe's sovereignty in the way that filing such a petition in state court rather than initiating one in a functioning tribal court would have done. Nor would requiring exhaustion at this late date serve any purpose other than further delay of a case that is already six years old. Under the analysis of *Krempel* and its progeny, we conclude no exhaustion was required. Having reached that conclusion, we need not address Findleton's further argument that the Tribe's assertion of tribal court jurisdiction was motivated by a desire to harass or conducted in bad faith.

## III.

### *The Tribe's Contention That the Ruling on Attorney Fees and Costs Was Premature*

The Tribe's final argument rests on an earlier argument we have already disposed of. It contends the superior court erred by deciding the fee and cost motion "before it concluded whether it had jurisdiction to do so." Not so. The court did conclude it had jurisdiction; its minutes indicate it considered and overruled the Tribe's jurisdiction argument. Further, we have again considered the Tribe's arguments and concluded that the superior court had jurisdiction to the decide the motion. Thus, the Tribe has not shown any abuse of discretion by the superior court.

---

[7] In its brief in the trial court, the Tribe argued only that the Tribal Constitution permits the Tribal Council to "delegate its judicial powers to tribal courts outside the reservation" and that it had done so. The request for judicial notice it filed in support of that assertion attached documents reflecting that its constitution was only amended to provide that power on October 30, 2012, some seven months after Findleton filed his petition to compel arbitration in state court. Further, the request sought notice of rules of procedure for the Northern California Intertribal Court System adopted on February 28, 2014, almost two years after Findleton filed his petition. Findleton objected to the Tribe's request for judicial notice. Neither the minutes of the fee proceeding nor the order state whether the court granted or denied the request. We need not address whether judicial notice was proper, since even if it was, the Tribe's documents fail to show there was a functioning tribal court until long after Findleton filed his petition.

11

## DISPOSITION

The order granting attorney fees and costs incurred by Findleton to enforce his right to arbitrate is affirmed.

_____
STEWART, J.

We concur.


_____
KLINE, P.J.


_____
RICHMAN, J.

*Findleton v. Pomo Band of Coyote Indians* (A150444)

Trial Court:   Mendocino County Superior Court

Trial Judge:   Hon. Richard J. Henderson

Counsel:

Ceiba Legal and Little Fawn Boland; Brady & Vinding and Michael V. Brady for Defendant and Appellant.

Timothy W. Pemberton for Plaintiff and Respondent.