Filed 4/22/21  Stonehaven, LLC v. Aslanian CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| STONEHAVEN, LLC,<br><br>    Cross-complainant and Respondent,<br><br>    v.<br><br>ARTHUR ASLANIAN,<br><br>    Cross-defendant and Appellant. | B294817<br><br>(Los Angeles County Super. Ct. No. BC656986) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Law Offices of Geoffrey G. Melkonian and Geoffrey G. Melkonian for Cross-defendant and Appellant.

Michael H. Weiss, Esq., Michael H. Weiss; The Leichter Firm, Kevin J. Leichter, Andrew E. Hewitt; Manatt, Phelps & Phillips and Benjamin G. Shatz for Cross-complainant and Respondent.

————————————

This matter arises from a loan agreement 4402 Mammoth Investors, LLC (Mammoth) entered to purchase a residential property; a personal guaranty of the loan executed by Arthur Aslanian, Mammoth's principal; and an alleged breach of the agreements. Following a bench trial, the trial court entered judgment in favor of the original lender's assignee, Stonehaven, LLC (Stonehaven), and against Aslanian. On appeal, Aslanian argues that he was improperly denied his right to a jury trial, and that this court should modify the judgment amount based on postjudgment proceedings in Mammoth's bankruptcy case. We affirm the judgment.

## BACKGROUND

Mammoth borrowed $1,500,000 from a lender to purchase a residential property (the property). The loan was secured by a deed of trust on the property and a promissory note. Under the loan agreement, Mammoth was required to make monthly interest payments and then pay the principal balance at the end of the loan's term. Aslanian signed a guaranty for Mammoth's debt. After making several interest payments, Mammoth defaulted on the loan and failed to pay the principal balance. The lender assigned its rights under the loan agreement and guaranty to Stonehaven.

In April 2017, Mammoth sued Stonehaven and several other defendants for failure to timely furnish a payoff demand statement pursuant to Civil Code section 2943. Stonehaven demurred to Mammoth's complaint and cross-complained against Aslanian for breach of contract based on the personal guaranty. The trial court sustained Stonehaven's demurrer without leave to amend. The parties litigated Stonehaven's cross-complaint over the next year.

A jury trial was scheduled for September 2018. One week before trial, Aslanian moved to continue the matter on the ground

2

that a separate trial in *26 Malibu, LLV v. 126 Valencia, LLC* (Super. Ct. L.A. County, 2019, No. SC124734), involving a dispute over title to the property (the quiet title action), should proceed first. The trial court denied the motion. On September 27, 2018, the parties selected a jury and gave opening statements. At the end of the day, Aslanian's counsel informed the court he intended to assert an unclean hands defense. The court indicated it would first require an offer of proof and asked counsel to brief the issue before trial resumed the next day. Aslanian's counsel also told the court he was having trouble securing the appearance of witness Sharham Elyaszadeh, Stonehaven's investor. Counsel said he had served a subpoena on Elyaszadeh, but he had not appeared for trial; while the court suggested it could issue a body attachment, counsel did not have proof of proper service at that time.

The next day, Aslanian filed a trial brief claiming members of Stonehaven conspired to prevent him from taking possession of the property. He alleged that after Mammoth purchased the property, Elyaszadeh filed the quiet title action to cloud Mammoth's title, thus preventing Mammoth and Aslanian from selling or refinancing the property. Further, Elyaszadeh's parents remained tenants on the property and, as a result of the quiet title action, Mammoth was unable to evict them. Aslanian asserted that Elyaszadeh and Stonehaven rebuffed Mammoth's attempt to obtain a payoff demand.

After an unreported chambers conference, the court found Aslanian's brief provided a sufficient offer of proof for the unclean hands defense. Counsel for both parties agreed with the trial court that the unclean hands theory was an equitable defense that the trial court would hear and determine. However, the court expressed concern that evidence of Stonehaven's unclean hands

3

could confuse the jury if heard concurrently with evidence of Aslanian's liability under the guaranty. While the court said it would be possible to craft a way to avoid potential confusion, it also suggested that a jury might be "superfluous." The court noted Stonehaven appeared to have established its prima facie case against Aslanian, and, if so, the only remaining issue would be Aslanian's equitable defense of unclean hands. Still, the court acknowledged Aslanian had a right to a jury trial on the legal claims and stated it would not deny him that right.

The court then presented Aslanian with the option of waiving his right to a jury. The court explained that a bench trial on all issues would eliminate any logistical problems with limiting evidence, and would make it possible for Aslanian to have more time to subpoena witnesses.[1] The court told Aslanian, "[I]f you are voluntarily willing to waive your right to a jury—'cause, really, what it comes down to is what I think about the unclean hands defense. Doesn't matter what they think. It's what I think. I can hear all your evidence. We can take our time. [¶] Maybe, you—you're not able to present evidence today. Maybe, you can present it next week or in a couple of weeks. . . . I don't know. There's more—there's less pressure, on me, to move the trial. Right? Within reason, within reason. [¶] And, as long as you demonstrate to me that you've made due diligent attempts to . . . subpoena people, you know, you did them in a . . . reasonable manner . . . I may be inclined to continue it to . . . effectuate service." However,

---

[1] At that point, Aslanian had still not subpoenaed Elyaszadeh to appear for trial; his testimony was critical to Aslanian's unclean hands defense.

4

the trial court stated that if Aslanian chose to proceed with the jury, the trial would resume that day, with the seated jury.

Aslanian indicated he wanted to waive his right to a jury trial. The court told Aslanian, "You do have a right to jury trial. I don't [want to] pressure you into waiving your right. You—considering everything I've said and what your counsel has said, you now are voluntarily waiving your right to a jury. Correct?" Aslanian responded, "That's correct." The trial court stated it would discharge the jury, hear motions, and determine how to move forward. The court then further inquired of Aslanian:

"The court: We've now taken all the pressure off, in terms of this jury being waiting—waiting out there; correct?

"[Aslanian]: Yes, Judge.

"The court: So, I [want to be] clear. No one has coerced you and forced you to waive your right to [a] jury; correct?

"[Aslanian]: Correct.

"The court: You're doing this freely and voluntarily, after considering all the . . . advantages and disadvantages of a jury; correct?

"[Aslanian]: Correct.

"The court: Right.

"And you do waive your right to a jury, at this point?

"[Aslanian]: Yes."

The court then dismissed the jury.

After a bench trial, the court found in favor of Stonehaven and rejected Aslanian's unclean hands defense. The court determined that Aslanian owed Stonehaven $1,500,000 for the principal amount of the loan plus $1,325,200.97 in prejudgment interest, totaling $2,825,200.97. Aslanian timely appealed.

## DISCUSSION

As an initial matter, Aslanian has requested that this court take judicial notice of three court documents: (1) a statement of decision from the quiet title action; (2) the judgment in Mammoth's favor in the quiet title action; and (3) a declaration from Mammoth's counsel filed in *In re 4402 Mammoth Investors, LLC* (Bankr. C.D.Cal. 2019, No. 2:18-bk-12055-WB), stating that the bankruptcy court made an oral ruling that certain interest charges and late fees under the loan agreement were unenforceable against Mammoth. The declaration further states that Stonehaven's counsel calculated the total amount owed under the loan agreement to be $2,574,691.67, as of December 5, 2019.

We have discretion to take judicial notice of any court record in the United States, including orders, findings of facts and conclusions of law, and judgments within court records. (Evid. Code, § 452; *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.) However, "any matter to be judicially noticed must be relevant to a material issue." (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.)

We deny the request as to the first two documents. Findings and the judgment from the quiet title action are not relevant to the two issues before us: whether the trial court improperly denied Aslanian his right to a jury trial, and whether the amount of the judgment must be modified. (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1529, fn. 7.) We grant the request for judicial notice of the document filed in the bankruptcy proceedings as a court record under Evidence Code section 452. We note that while we take judicial notice of the existence of court records, we do not take judicial notice of the truth of the matter asserted in such

6

documents.  (*Barri v. Workers' Comp. Appeals Bd.* (2018)
28 Cal.App.5th 428, 437; *Guarantee Forklift, Inc. v. Capacity of Texas Inc.* (2017) 11 Cal.App.5th 1066, 1075; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089 [court may take judicial notice but disregard the material as not applicable].)

I. **Aslanian was not denied his right to a jury trial.**

Aslanian argues the trial court coerced him into waiving his right to a jury trial and improperly prevented him from presenting his unclean hands defense to a jury.  We disagree.

The California Constitution guarantees a civil litigant the right to a jury trial and denial of that right is reversible error.  (Cal. Const., art. I, § 16; *Cohill v. Nationwide Auto Service* (1993) 16 Cal.App.4th 696, 700.)  However, a litigant may properly waive his or her right to a jury trial by "oral consent, in open court, entered in the minutes."  (Code Civ. Proc., § 631, subd. (f)(3).)  We resolve any doubts in the validity of the waiver in favor of preserving the litigant's right to a jury trial.  (*Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654.)

As we understand his argument, Aslanian first contends the trial court erred in determining the unclean hands defense should be tried to the court rather than to a jury.  This contention lacks merit.  In *Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 621, for example, the court explained that it is an "indisputable proposition" that equitable claims such as the defense of unclean hands are generally tried to a court.  (*Raedeke v. Gibraltar Savings & Loan Ass'n* (1974) 10 Cal.3d 665, 671 [where action has both legal and equitable claims, equitable claims are tried to the court].)  Contrary to Aslanian's assertion on appeal, *Unilogic* does not support the proposition that he was entitled to a jury trial on the unclean hands defense.  The *Unilogic* court concluded that, in an

appropriate case, the trial court has the *discretion* to submit an unclean hands defense to a jury. (*Id.* at pp. 622–623.) The court did not conclude an assertion of the defense creates an *entitlement* to a jury, and other authorities have affirmatively held there is no such entitlement. (See *A-C Co. v. Security Pacific Nat. Bank* (1985) 173 Cal.App.3d 462, 473–474 [trial court erred in submitting equitable defense of unclean hands to the jury]; *Fincher v. Fincher* (1981) 119 Cal.App.3d 343, 351 [defendant not entitled to jury trial on equitable defenses to plaintiff's legal claims].)

Indeed, the parties here all agreed that the unclean hands defense was equitable in nature and would be tried to the trial court. That Aslanian proposed a jury instruction for the unclean hands defense in his trial brief does not establish that he was objecting to the court's determination that the issue would be tried to the court. Although Aslanian argues he made a proper objection during a chambers conference, there is no record of the conference beyond the trial court's summary that the parties agreed the unclean hands defense was equitable in nature and would not be decided by the jury. To the extent Aslanian could have sought a jury's determination on the unclean hands defense, or disagreed with a bench trial on the defense, he forfeited the issue on appeal by failing to object in the trial court. (*San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 351 [failure to object in the trial court generally constitutes waiver of the issue for appeal].)

We also reject Aslanian's second contention that the trial court erred by forcing him to waive his right to a jury trial on the legal issues. The record before us leaves no doubt that Aslanian's waiver was voluntary. Before the court took Aslanian's waiver, the parties had already selected a jury and made their opening

8

statements. The trial court gave Aslanian the option of proceeding with the jury that day or electing a bench trial on all issues. When the trial court presented this option, it made clear to Aslanian that it could fashion a way for him to present his unclean hands defense without confusing the jury with respect to Stonehaven's breach of contract cause of action. However, since trial had begun and the jury was waiting, the trial court reasonably told Aslanian that if he chose to proceed with the jury, trial would resume that day. A review of all the proceedings shows that, at the time the trial court presented Aslanian with this choice, Aslanian had just made his offer of proof and still had not secured Elyaszadeh's appearance for trial. The trial court's proposal to Aslanian offered him a way to move forward with the case while also affording him additional time to marshal the evidence for his defense. The court repeatedly informed Aslanian he had a right to a jury trial on the legal claims. Further, the court did not suggest Aslanian could not present his unclean hands defense if he chose to try the legal claims to a jury. In this context, Aslanian expressly waived his right to a jury trial, on the record, in open court, while represented by counsel. He cannot now complain on appeal that he was denied a jury trial.

II. **Aslanian has not demonstrated error in the judgment amount.**

Aslanian does not contend the trial court erred in determining the amount of the judgment. Instead, he argues this court should reduce the judgment against him to reflect the lesser amount he anticipates the bankruptcy court will conclude Mammoth owes under the loan agreement.[2] Aslanian relies on Civil Code section

---

[2] Aslanian acknowledges that the bankruptcy court has not determined the actual amount due, but points to findings the court

9

2809, which states: "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation." In other words, as Mammoth's surety, Aslanian cannot owe more than the amount the bankruptcy court determines Mammoth owes. Aslanian did not raise this argument, or any similar argument, in the trial court.

Three fundamental rules of appellate review and procedure are fatal to Aslanian's argument. First, an appellate court "will consider only matters which were part of the record at the time the judgment was entered. [Citation.] This rule preserves an orderly system of appellate procedure by preventing litigants from circumventing the normal sequence of litigation." (*Reserve Ins. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) The bankruptcy court orders Aslanian relies upon to attack the trial court judgment were made in October 2019, well after the November 2018 judgment rendered in this case. Aslanian does not contend there are circumstances that would warrant our departure from the general rule that a reviewing court does not consider postjudgment matters. (See *AREI II Cases* (2013) 216 Cal.App.4th 1004, 1021 [only narrow exceptions permit consideration of extra-record evidence].)

Second, theories not raised in the trial court cannot be raised for the first time on appeal. " 'The policy behind the rule is fairness.' [Citation.] 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an

---

made disallowing certain compounding default interest features and other late charges. At oral argument, Stonehaven's counsel represented to this court that the bankruptcy proceeding has been dismissed; Aslanian's counsel appeared to concede that this was an accurate statement.

opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack.' " (*Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569.)

Third, and most importantly, "a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

As noted above, Aslanian does not argue the trial court erred in determining the amount of the judgment. Instead, he asserts that when the bankruptcy court, in a separate proceeding, makes a future order setting the amount of Mammoth's indebtedness, this court should modify the trial court's judgment against Aslanian to comport with the bankruptcy court finding. This assertion does not satisfy Aslanian's burden to demonstrate the trial court committed an error that justifies reversal of the judgment in this case.

Aslanian has offered no legal authorities or analysis to explain why this court should, in the first instance, adopt the postjudgment, interim findings of another court to modify a judgment he does not assert was the result of trial court error. The mere recitation of the general principles set forth in Civil Code section 2809 is not sufficient. " 'It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.' " (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 204.)

11

## DISPOSITION

The judgment is affirmed.  Stonehaven, LLC is awarded its costs on appeal.

NOT TO BE PUBLISHED.


ADAMS, J.*


We concur:


EDMON, P. J.


EGERTON, J.

---

*\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.*