Filed 10/17/23  Center for Healthcare Education and Research v. Sacaris CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CENTER FOR HEALTHCARE EDUCATION AND RESEARCH, INC., <br><br> Plaintiff, Cross-defendant and Appellant, <br><br> MARK SACARIS, <br><br> Cross-defendant and Appellant, <br><br> v. <br><br> INTERNATIONAL CONGRESS FOR JOINT RECONSTRUCTION, INC., <br><br> Defendant, Cross-complainant and Respondent. | D080838 <br><br><br> (Super. Ct. No. 37-2017-00004475-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Law Offices of Stephen B. Morris and Stephen B. Morris for Plaintiff, Cross-defendant, and Appellant Center for Healthcare Education and Research, Inc. and Cross-defendant and Appellant Mark Sacaris.

No appearance for Defendant, Cross-complainant, and Respondent International Congress for Joint Reconstruction, Inc.

This appeal follows our reversal of a prior judgment and subsequent retrial to determine the appropriate amount of disgorgement for a single cause of action for breach of fiduciary duty. The litigation arose after the International Congress for Joint Reconstruction, Inc. (ICJR) discovered its contractor, the Center for Healthcare Education and Research, Inc. (CHE), was overbilling for the service of producing medical education conferences and taking advantage of ICJR in other ways.

After the initial bench trial, the court found CHE had breached the fiduciary duty it owed to ICJR by failing to disclose its charges, but concluded disgorgement of profits was not available because ICJR did not prove it suffered monetary harm. On appeal from that ruling, we held that ICJR was not required to show harm to obtain disgorgement and that ICJR had "met its burden to establish a reasonable approximation of the amount" that CHE profited by its misconduct. (*Center for Healthcare Education and Research, Inc. v. International Congress for Joint Reconstruction, Inc.* (2020) 57 Cal.App.5th 1108, 1115 (*Center*).) We reversed the portion of the judgment finding in CHE's favor on ICJR's breach of fiduciary duty claim, remanded the matter to the trial court for the limited purpose of conducting "further proceedings to determine the amount to be awarded to ICJR," and otherwise affirmed the judgment. (*Id*. at p. 1133.)

After remand, the trial court held a one-day retrial on the amount of profits CHE was required to disgorge. Based on the testimony of ICJR's witnesses, the trial court concluded that CHE had obtained $1,281,012 in secret profits as a result of its breach of fiduciary duty and ordered that

2

amount as an offset to the breach of contract damages CHE was awarded after the initial trial.  The court subsequently entered a modified judgment reflecting the disgorgement award.  CHE now appeals, asserting the award was barred by the doctrine of unclean hands.  ICJR has not responded to the appeal.  As we explain, CHE's appeal fails because our limited remand did not leave open the issue of ICJR's conduct for additional consideration, CHE forfeited the argument by not raising it in the initial trial, and the argument lacks merit.  Accordingly, we affirm the modified judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *General Background*

The history of the dispute between ICJR and CHE is set forth in great detail in *Center*.  We provide a brief overview of that history here.

ICJR was formed in 2008 by a small number of prominent orthopedic surgeons to provide accredited continuing medical education conferences on the subject of joint reconstruction.  (*Center, supra*, 57 Cal.App.5th at p. 1115.)  The organization had a volunteer board, whose members had "active medical practices" and "lacked the time and business expertise" to produce conferences.  (*Ibid.*)  In 2009, the board's president, Dr. William Scott, met Mark Sacaris, who was the president of CHE and managed its operations.  (*Id.* at p. 1116.)

In June of 2009, Scott hired Sacaris to coordinate and manage ICJR's medical conferences.  Scott and Sacaris did not enter into a written contract, and Scott never requested details about the cost of services.  (*Center, supra*, 57 Cal.App.5th at p. 1116.)  Sacaris provided services through CHE.  However, ICJR was not aware of CHE until the parties' relationship later soured.  (*Ibid.*)  Sacaris was given full control over ICJR's bank accounts for payment of invoices and expenses associated with its medical conferences.  As

3

a result of this control, "Sacaris had the ability to prepare and adjust his own bill as manager of CHE, and then approve payment of CHE's bill on behalf of ICJR, without the knowledge or approval of ICJR's board of directors." (*Id.* at p. 1117)

To turn a profit, CHE's employees billed their services by the hour for each conference and the firm's accountant would prepare internal worksheets stating the hours billed, the employees' hourly rates, and the number of hours billed for each employee. (*Center, supra*, 57 Cal.App.5th at p. 1117.) Sacaris "would then increase the employees' hourly rates by between 17 and 20 percent to reimburse CHE for its overhead expenses" and "add an additional markup of up to 80 percent of the employees' hourly rates . . . ." (*Ibid.*) "Sacaris did not disclose to ICJR that he was profiting by marking up [CHE's] labor costs." (*Ibid.*)

Once Sacaris determined the amount to bill, CHE's accountant would create an invoice, and then Sacaris would approve payment on behalf of ICJR. (*Center, supra*, 57 Cal.App.5th at p. 1117.) ICJR was "kept 'completely blind to the amounts billed by CHE for services and expenses as no invoice or billing information was ever submitted to any of the ICJR Board of Directors, including its president and treasurer.' " (*Ibid.*)

Sacaris eventually expanded the services CHE provided to ICJR into three new areas. He hired CHE to develop and maintain ICJR's website, work that CHE was not experienced in providing. (*Center, supra*, 57 Cal.App.5th at p. 1118.) Sacaris also formed a new company, Live Surgery, to provide audiovisual services for live-streaming surgeries during conferences, a service that CHE previously outsourced. "The quality of Live Surgery's broadcasts was poor, which led conference attendees to complain and harmed ICJR's reputation." (*Ibid.*) Finally, Sacaris granted

pharmaceutical companies the ability to conduct symposia at the conferences to promote their products in exchange for a significant honoraria to ICJR, and arranged for CHE to run the symposia. (*Ibid.*)

In 2013, ICJR made Sacaris its chief of operations and a nonvoting member of the board of directors. This did not change Sacaris's practice of paying CHE without notifying anyone else involved with ICJR. (*Center, supra*, 57 Cal.App.5th at p. 1118.) At times, ICJR did not have sufficient cash to pay CHE. When this occurred, CHE would advance the invoices with the expectation of later payment. As a result, over time, ICJR's outstanding debt to CHE grew. "Despite grossing $20 million over the course of its relationship with Sacaris, ICJR began to operate at a loss." (*Ibid.*)

In February 2016, Sacaris informed the ICJR board that CHE was owed $2 million, and demanded payment. "Not long after, a CHE employee shared concerns about CHE's billing practices with members of the board." (*Center, supra*, 57 Cal.App.5th at pp. 1118–1119.) In response, ICJR investigated CHE's billing practices, discovered Sacaris's malfeasance, and terminated its relationship with CHE without payment. (*Id.* at p. 1119.)

B. *Initial Trial and Appeal*

On February 3, 2017, CHE brought suit against ICJR asserting a single claim of breach of contract and seeking $2.4 million in damages. (*Center, supra*, 57 Cal.App.5th at p. 1119.) ICJR then filed its cross-complaint against CHE and Sacaris asserting claims for breach of fiduciary duty, fraud, negligence, conversion, unfair competition, constructive trust, and accounting. (*Ibid.*) ICJR sought damages, as well as disgorgement and restitution of all illegally obtained profits. (*Ibid.*)

The bench trial took place in January 2019. ICJR did not dispute the breach of contract claim, except for an item of costs that was duplicated.

(*Center, supra*, 57 Cal.App.5th at p. 1119.) Rather, it focused on offsetting its damages through its cross-claims. "ICJR identified four ways in which CHE and Sacaris had allegedly breached their duties to ICJR under the cross-claims and sought disgorgement of the undisclosed profits recovered through each form of misconduct. These four categories of wrongdoing and associated relief were: (1) the profits CHE and Sacaris earned from the management services provided to ICJR, on the theory that their failure to disclose the amounts they were charging or compensating themselves for their services breached their fiduciary duties to ICJR; (2) the amount by which CHE and Sacaris overbilled ICJR for managing and developing ICJR's websites, without disclosing their fees or their employees' lack of necessary website development experience; (3) the amount by which CHE and Sacaris profited by assisting pharmaceutical companies with midconference symposia, without disclosing this arrangement to ICJR; and (4) the amount by which Sacaris profited by running ICJR's live surgery broadcasts through Live Surgery, while actively concealing his interest in Live Surgery from ICJR." (*Id*. at pp. 1119–1120.)

After the trial, the court issued a tentative statement of decision and conducted a hearing to consider ICJR's objections to the tentative ruling. (*Center, supra*, 57 Cal.App.5th at p. 1120.) The court then issued its final decision, finding in favor of CHE on its breach of contract claim and awarding it $2,299,259.42 in damages. (*Ibid*.) The court rejected two of ICJR's four theories of liability. It concluded that ICJR's claim for breach of fiduciary duty based on CHE and Sacaris's failure to disclose the amounts they were charging or compensating themselves for their services failed because ICJR did not adequately "prove it was overcharged and thus suffered economic damages from the breach." (*Id*. at p. 1121.) The court also rejected ICJR's

6

claim based on CHE and Sacaris's failure to disclose and profit from management of the pharmaceutical symposia, finding this was not an opportunity ICJR would have taken itself. The court, however, agreed with ICJR that CHE and Sacaris breached their fiduciary duties by failing to disclose their charges for website development and their lack of experience in the work, and by concealing Sacaris's interest in Live Surgery. The court awarded ICJR $800,000 for the former claim and $73,310 for the latter for a total damages offset of $873,310. (*Id.* at pp. 1121–1122.)

The court entered judgment in August 2019, and ICJR appealed the trial court's rejection of its first theory of liability. Specifically, ICJR argued the trial court "erred as a matter of law when it held ICJR was required to present evidence that it suffered monetary harm or loss from the breach [of fiduciary duty] in order to recover." (*Center, supra*, 57 Cal.App.5th at p. 1124.)

We agreed with ICJR and reversed the trial court's finding that ICJR had not established its claim for breach of fiduciary duty based on CHE and Sacaris compensating themselves from ICJR's accounts without adequate disclosure or board approval.[1] We held that, "while '[t]he elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach' [citation], a principal seeking disgorgement of a fiduciary's wrongful gains is not required to prove it suffered economic damage from the breach in order to recover." (*Center, supra*, 57 Cal.App.5th at p. 1126.) Rather, we held that, " '[w]here a person profits from transactions conducted by him as a fiduciary, the proper measure of damages is full disgorgement of any secret profit made

---

[1] ICJR also unsuccessfully appealed the trial court's rejection of its claim as it related to the pharmaceutical symposia.

7

by the fiduciary regardless of whether the principal suffers any damage.' " (*Ibid.*) Secret profits, we held, "consist of all benefits an agent acquires from the agency in excess of the agent's agreed compensation." (*Id*. at p. 1127.)

Further, we concluded that ICJR had sustained its "burden to prove a 'reasonable approximation' of the benefit CHE and Sacaris gained from the breach of their fiduciary duties . . . ." (*Center*, *supra*, 57 Cal.App.5th at p. 1128.) We stated that "ICJR submitted uncontradicted evidence in the form of its expert accountant's testimony establishing that CHE's and Sacaris's undisclosed charges for management services earned them $1,430,260 in profits from ICJR between 2013 and 2016," the four-year period for which they sought recovery. (*Id*. at p. 1130.) ICJR asked this court to remand the matter with directions to modify the judgment to award that amount. However, because the "trial court possesses substantial discretion to balance the equities and fashion the award it deems appropriate," we remanded for the trial court to "conduct such further proceedings as it deems necessary to enable it to exercise its direction . . . and determine the amount of profits to be disgorged from CHE and Sacaris." (*Ibid.*)

C. *Current Proceedings*

On remand, the trial court conducted an evidentiary hearing to determine the appropriate remedy.[2] The parties submitted trial briefs in advance of the hearing and also stipulated that the evidence received during trial could be considered by the court. ICJR presented the testimony of its trial expert, economist Robert Taylor, who reiterated the opinion he expressed at trial that ICJR was entitled to $1,430,260, which was the

---

[2] CHE and Sacaris have not provided transcripts for the hearing to this court. Thus, our summarization of the proceeding is taken from the trial court's subsequent order that CHE and Sacaris challenge on appeal.

8

amount CHE billed ICJR in excess of its costs. Taylor defined costs as the hourly payroll rate for employees, benefits paid to employees, and typical overhead costs. Taylor then subtracted this figure from the amount CHE billed ICJR to arrive at the cost of service. Taylor also adjusted Sacaris's billing rate—which Sacaris had increased from $109 in 2013 to $250 in 2016—to a constant $150, equating to an annual salary of $300,000.

ICJR also introduced the testimony of an expert in the management of medical conferences, who testified that the number of hours billed by CHE for its conferences was excessive. He stated that, in his opinion, CHE overcharged ICJR by $1,393,799. Finally, ICJR introduced a former employee of CHE, Jason Heath, who was the company's president of operations from 2014 to 2017. Heath testified there were no changes to the work performed by CHE for ICJR to justify the increases in hours billed over the relevant time period.

Sacaris testified on behalf of CHE and himself. He told the court his rates were justified by his expertise and because that was what the market could bear. He also stated that he charged ICJR less than other clients. CHE's accountant's videotaped trial testimony was presented. She stated the total profit for the years in question was only $1,058,007, which included increases in hourly billing rates that Taylor reduced. In addition, in their trial brief, CHE and Sacaris asserted ICJR was not entitled to disgorgement of any profit under the doctrine of unclean hands because it had admittedly breached its agreement with Sacaris.

After the proceeding, the trial court issued its final decision, ordering CHE and Sacaris to disgorge an additional $1,281,012 in ill-gotten profit. The court ordered the additional disgorgement award to be offset against the contract damages awarded to CHE. The trial court rejected CHE and

9

Sacaris's unclean hands doctrine argument, finding the argument was forfeited because it was not raised during the initial trial, was outside the scope of the limited remand issued by this court, and was meritless because ICJR stopped payment only once it discovered CHE and Sacaris's improper conduct. After additional litigation over the form of the judgment, the trial court entered a modified judgment awarding ICJR $1,281,012 to be set off against the contract damages owed to CHE. CHE and Sacaris timely appealed from that judgment.

## DISCUSSION

As noted, CHE and Sacaris assert the court "erred in awarding equitable relief to ICJR in relation to the same contract which ICJR breached." ICJR has not responded to the appeal. "However, we do not treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but independently examine the record and reverse only if prejudicial error is found." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203; Cal. Rules of Court, rule 8.220(a)(2).)

## I

This appeal is governed by the law that applies after a reversal by the Court of Appeal that is accompanied by directions requiring specific proceedings on remand. " 'A reviewing court has authority to "affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." (Code Civ. Proc., § 43.) The order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned.' [Citations.] 'The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void.' " (*Ayyad v.*

10

*Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859 (*Ayyad*); see *Hampton v. Superior Court in and for Los Angeles County* (1952) 38 Cal.2d 652, 655 ["When there has been a decision upon appeal, the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void."] (*Hampton*).)

"[T]he rule requiring a trial court to follow the terms of the remittitur is jurisdictional in nature. [Citation.] The issues the trial court may address in the remand proceedings are therefore limited to those specified in the reviewing court's directions, and if the reviewing court does not direct the trial court to take a particular action or make a particular determination, the trial court is not authorized to do so." *(Ayyad, supra*, 210 Cal.App.4th at pp. 859–860.) "On remand, the trial court must adhere to the reviewing court's directions even if the lower court is convinced the appellate court's decision is wrong or has 'been impaired by subsequent decisions[.]' . . . In short, when an appellate court remands a matter with directions governing the proceedings on remand, 'those directions are binding on the trial court and *must* be followed. Any material variance from the directions is unauthorized and void.' " (*Id*. at p. 860.)

"Whether the trial court has correctly interpreted an appellate opinion is an issue of law subject to de novo review. In interpreting the language of a judicial opinion, the appellate court looks to the wording of the dispositional language, construing these directions 'in conjunction with the opinion as a whole.' " (*Ducoing Management, Inc. v. Superior Court* (2015) 234 Cal.App.4th 306, 313.) Further, only if the trial court's variance from this

11

court's directions is "material," is reversal appropriate. (*In re Candace P.* (1994) 24 Cal.App.4th 1128, 1131.)

In addition, new theories of liability or defense are generally not properly considered on appeal. "It is well established that appellate courts will ordinarily not consider errors that 'could have been, but were not raised below.'" (*Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569.) "'The policy behind the rule is fairness.' [Citation.] 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.'" (*Ibid.*)

II

In support of their argument that the unclean hands doctrine bars damages for ICJR's breach of fiduciary duty claim, CHE and Sacaris rely on *DeGarmo v. Goldman* (1942) 19 Cal.2d 755 (*DeGarmo*). However, *DeGarmo* held only that the trial court erred by excluding evidence of a corporate president claimant's own wrongdoing in relation to his shareholder claims of corporate malfeasance. (*Id.* at pp. 758, 764–765.) To avoid forfeiture, CHE and Sacaris assert that their answer to ICJR's complaint contained the doctrine of unclean hands as an affirmative defense. However, they did not argue or present evidence on the defense during the initial trial, and first argued the doctrine barred recovery in a letter submitted to this court under

California Rules of Court, rule 8.254 just days before oral argument.[3] We addressed the issue in a footnote, stating *DeGarmo*, which was published in 1942, fell outside the scope of rule 8.254, and that CHE and Sacaris had forfeited the argument by not raising it before the judgment was entered. (*Center, supra*, 57 Cal.App.5th at p. 1129, fn. 9.)

On remand, CHE and Sacaris asked the trial court to consider the unclean hands defense. The trial court rejected the argument for three reasons. Like this court, the trial court found the issue was forfeited by CHE and Sacaris's failure to raise the defense during trial or during the litigation of the final statement of decision. In addition, the trial court found the issue was not within the narrow parameters of our remand. The court explained its task was to determine "what amount of secret profit should be the subject of the disgorgement remedy," and concluded the question of unclean hands

---

[3]   Rule 8.254, titled "New Authority," provides:

"(a) Letter to court

If a party learns of significant new authority, including new legislation, that was not available in time to be included in the last brief that the party filed or could have filed, the party may inform the Court of Appeal of this authority by letter.

(b) Form and content

The letter may provide only a citation to the new authority and identify, by citation to a page or pages in a brief on file, the issue on appeal to which the new authority is relevant. No argument or other discussion of the authority is permitted in the letter.

(c) Service and filing

The letter must be served and filed before the court files its opinion and as soon as possible after the party learns of the new authority. If the letter is served and filed after oral argument is heard, it may address only new authority that was not available in time to be addressed at oral argument."

was not within the scope of our directions. Finally, the trial court concluded that even if it were to consider the defense, it would not preclude relief since the breach by ICJR was caused by its discovery of Sacaris's breach of fiduciary duty and not any dishonesty, malice, or other improper motive on the part of ICJR.

We agree with the trial court that this issue falls outside the scope of our prior remand. For this reason alone, affirmance of the trial court's decision is appropriate. As discussed, after a limited remand, the trial court's jurisdiction is restricted. (*Hampton, supra*, 38 Cal.2d at p. 655.) The "court is empowered to act only in accordance with the direction of the reviewing court," and actions that do "not conform to those directions [are] void." (*Ibid.*) In this case, we directed the trial court to exercise its discretion "to balance the equities and fashion the award it deems appropriate," and remanded for the court to "conduct such further proceedings as it deems necessary to enable it to exercise its discretion in the first instance and determine the amount of profits to be disgorged from CHE and Sacaris." (*Center, supra*, 57 Cal.App.5th at p. 1130.)

We also provided guidance to the trial court on how to determine an appropriate amount of disgorgement damages. We reminded the trial court that the remedy is meant "to have a deterrent effect and ensure fiduciaries are held to a standard ' "stricter than the morals of the marketplace." ' " (*Center, supra*, 57 Cal.App.5th at p. 1130.) We noted specifically that "denying ICJR a recovery altogether would fail to recognize the seriousness of their wrongdoing and would fall short of achieving the goal of deterring future misconduct." (*Id.* at p. 1131.) In addition, our opinion made clear that it was CHE and Sacaris that were to "bear the burden to present evidence demonstrating the reasonableness of the amounts they charged ICJR for

14

their management services," and that any uncertainty in "the reasonableness of their charges [was to] be resolved in favor of ICJR." (*Ibid.*)

This directive made clear that the trial court's only task on remand was to determine the appropriate amount of a disgorgement award. Thus, CHE and Sacaris's request to reopen the question of liability for their breach of fiduciary duty by considering the question of unclean hands was outside the scope of our limited remand and the trial court's jurisdiction.

In addition, we agree with the trial court that CHE and Sacaris forfeited their argument by failing to raise it before the initial judgment was entered. It is well-established that new theories of defense cannot be raised for the first time on appeal. (*Findleton, supra*, 27 Cal.App.5th at p. 569.) The reason for this rule is fairness. ICJR had no ability to contest the defense, which involves factual questions, since it was not raised during trial. Our earlier decision concluding the argument was forfeited was proper, and the limited remand did not reopen the cause of action in a manner that would permit the issue to be litigated in the trial court after it regained jurisdiction after the initial appeal. Accordingly, in addition to being foreclosed by the limited remand, the issue was forfeited.

Finally, even if we were to reach the merits of CHE and Sacaris's argument, we would agree with the trial court that it lacks merit. " ' "The unclean hands doctrine 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.' " ' " (*Quick v. Pearson* (2010) 186 Cal.App.4th 371, 380.) "The doctrine of unclean hands rests on the maxim that ' "he who comes into equity must come with clean hands." ' . . . The decision whether to apply the unclean hands defense is a matter within the trial court's discretion. [Citation.] In exercising this discretion, the court 'must consider the material facts

15

affecting the equities between the parties . . . .' " (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1495–1496; see also *Stine v. Dell'Osso* (2014) 230 Cal.App.4th 834, 844 [the doctrine " 'is available to protect the court from having its powers used to bring about an inequitable result in the litigation before it.' [Citation.] By the same token, ' "[w]henever an inequitable result would be accomplished by application of the 'unclean hands' doctrine the courts have not hesitated to reject it." ' "].)

Thus, to foreclose relief to a claimant based on the doctrine of unclean hands, the opposing party must show bad faith or otherwise inequitable conduct relative to their own conduct. CHE and Sacaris have not made such a showing. As the trial court explained, the reason ICJR breached its agreement to pay CHE and Sacaris for their services was ICJR's shock and confusion when Sacaris "arrived at a yearly ICJR Board meeting, with a bombshell announcement" that CHE had "been routinely advancing conference costs and expenses [o]n behalf of ICJR when ICJR's checking account was low or empty," and that ICJR owed CHE over $2 million. In response, ICJR breached its unwritten agreement with Sacaris so that it could determine the actual amount it owed, "which ultimately required Court intervention."

As the trial court found, there was "no evidence suggesting dishonesty, malice or any other inappropriate motive on behalf of ICJR as its reason for not paying the management fees." Rather, ICJR stopped paying because it discovered misconduct on the part of Sacaris and CHE. Accordingly, the trial court's determination that the doctrine of unclean hands does not bar ICJR's recovery was not an abuse of discretion.

16

DISPOSITION

The modified judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

DO, J.

17