Filed 5/8/25  Omei Taichi Culture Academy v. Shen CA6

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| OMEI TAICHI CULTURE ACADEMY, INC., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br> EDDY SHEN et al., <br><br> Defendants and Appellants. | H051149, H051491 <br> (Santa Clara County <br> Super. Ct. No. 18CV330195) <br><br> **ORDER MODIFYING OPINION AND DENYING REHEARING** <br><br> **CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on April 11, 2025 be modified as follows:

On page 18, the sentence "The parties shall bear their own costs on appeal" is deleted, and the following two paragraphs are inserted in its place:

"The order dated September 6, 2023 is reversed, and we remand with directions to vacate the fees and costs award against Shen and to reconsider the request for fees and costs against Shen consistent with this opinion.  The attorney's fees and costs award against LRS is affirmed.

"The parties shall bear their own costs on appeal."

This modification changes the judgment.

Appellants' letter dated April 14, 2025, and motion dated April 28, 2025, are deemed petitions for rehearing, and the petitions are denied.

_____

BROMBERG, J.


_____

GREENWOOD, P. J.


_____

DANNER, J.


*Omei Taichi Culture Academy, Inc., et al. v. Shen et al.*
H051149
*Omei Taichi Culture Academy, Inc., et al. v. Shen et al.*
H051491

2

Filed 4/11/25  Omei Taichi Culture Academy v. Shen CA6 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| OMEI TAICHI CULTURE ACADEMY, INC., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> EDDY SHEN et al., <br><br> Defendants and Appellants. | H051149, H051491 <br> (Santa Clara County <br> Super. Ct. No. 18CV330195) |

Eddy Shen is a former architect as well as the former president and sole owner of LRS Associates Architecture and Planning, Inc. (LRS).[1]  In February 2014, Shen entered into a contract with Yunjian Zou, who owns a school in Cupertino, and another entity to provide architectural services for an expansion of the school.  In the contract, Shen promised, among other things, to apply for and obtain a building permit from the City of Cupertino.  However, Shen failed to submit a building permit application acceptable to the city before the use permit for the expansion expired and the application became moot.

In 2018, Zou and Omei Taichi Culture Academy, Inc. (Omei Academy) sued Shen and LRS asserting breach of contract and three other claims.  In late 2022 and early 2023,

---

[1] Shen has stopped practicing as an architect:  In April 2015, in the midst of the events at issue in this case, his license expired and was not subsequently renewed.  In December 2022, during the trial in this case, LRS was dissolved.

1

a bench trial was held.  Afterwards, the trial court granted plaintiffs' claims for breach of contract, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing, and it awarded $27,347.23 in damages as well as over $140,000 in attorney's fees and costs.

Defendant Shen and LRS appeal the breach findings as well as the size of the damages, attorney's fees, and costs awards.  Plaintiffs in turn cross-appeal the denial of prejudgment interest.  We affirm in part.  As explained below, we conclude that the trial court properly found that LRS breached the February 2014 contract but that the trial court held Shen liable under the contract on an erroneous ground and remand for consideration whether he may be held liable on an alter ego theory.  We also conclude that the trial court erred in granting the fiduciary duty and breach of the covenant of good faith and fair dealing claims.  Finally, we conclude that plaintiffs should have been awarded prejudgment interest.  Otherwise, we affirm the judgment.

## I. BACKGROUND

### A. The School Expansion and Use Permit

Zou owns Omei Academy, which owns a school in Cupertino serving children from five to 12 years old.  In 2011 Zou decided to expand the school to include a preschool and daycare center, which required remodeling to satisfy building and safety code requirements for such facilities. This remodeling required both a use permit and a building permit, the latter of which may be issued only while the use permit is in effect.  Use permits are good for two years and city regulations allow one, two-year extension of such permits.

Zou obtained a use permit from the City of Cupertino in June 2011.  However, Zou was delayed by difficulty in moving a utility pole.  So, in June 2013 he applied for a two-year extension of the use permit.  The city approved the extension on the condition that Zou submit a building permit by March 19, 2014.

2

## B. The February 2014 Contract

After unsuccessfully retaining another architect, Zou met Eddy Shen and hired him to provide architectural services and obtain a building permit for the school expansion project. On February 23, 2014, Shen gave Zou a two-page contract. The contract stated that it was between "YunJian Zou (Omei Learning Center) ('Client')" and "LRS Associates, Inc. ('Architect')," and it was signed by Zou and by Shen, as LRS's president.

In the February 2014 contract, LRS promised to provide design and construction documents for interior improvements at the Omei Learning Center in exchange for a fixed fee of $5,000. The contract listed 13 construction documents and stated that LRS would "[s]ubmit and obtain [a] building permit." The contract did not set a time by which this building permit would be obtained.

The contract also contained a provision allowing LRS to recover attorney's fees "[i]n the event after issuance of building permit Client must pay entire fee, it becomes necessary to enforce the terms of this Agreement."

Omei Academy sent LRS a check for $3,000 as the deposit specified in the contract on February 23, 2014, the day that the contract was executed. In July 2015, Omei sent a second check for $2,000, the remaining balance of the $5,000 fee, as well as a third check of $192.36 for "print fees." Unlike the deposit check, the July 2015 checks were made out to "Eddy Shen," not to LRS.

## C. The Building Permit Applications

Zou testified that he told Shen at the outset that he had a use permit that would expire in June 2015 and that an application for a building permit had to be filed by March 19, 2014. Although Shen denied this, he filed an application on March 18, 2014, one day before the deadline imposed by the use permit extension—which Shen testified at trial was a coincidence.

3

The City of Cupertino rejected the application and returned it with over 100 comments needing resolution. In December 2014, just over eight months after the first application, Shen submitted a revised application. The city rejected this application as well, returning it with 90 comments to be resolved. Another seven months later, in July 2015, Shen submitted another revised application. The city rejected this application because Omei Academy's use permit had expired in June and the city was no longer able to approve a building permit.

Zou subsequently abandoned the school expansion project.

**D. The Proceedings Below**

In June 2018 Zou and Omei Academy sued Shen and LRS for breach of contract, breach of the implied covenant of good faith and fair dealing, willful misconduct, and breach of fiduciary duty. A three-day bench trial was held on November 28, 2022, December 22, 2022, and January 17, 2023. The only two witnesses were Zou and Shen. At the end of trial, defendants asserted that Shen was not a party to the February 2014 contract and was entitled to judgment on the breach of contract claim; plaintiffs responded that LRS was an alter ego of Shen and offered to amend their complaint to conform to the proof proffered at trial.

On April 5, 2023, the trial court issued a statement of decision. The court began by finding that Shen was a party to the February 2014 contract. In so doing, it did not address plaintiffs' alter ego theory. Instead, noting that officers and directors of a corporation "may be personally liable if they ordered, authorized, or participated in the corporation's tortious conduct," the trial court held that Shen, who was the president and sole owner of LRS, was "personally liable" under the February 2014 contract. The trial court then found that LRS and Shen breached the contract by failing to submit and obtain a building permit within a reasonable period of time. For largely the same reason, and because Shen acted as if he were an architect after his license expired in April 2015, the court found that defendants breached the implied covenant of good faith and fair dealing

4

and their fiduciary duty to plaintiffs. However, the trial court dismissed plaintiffs' willful misconduct claim on the ground that willful misconduct is not a valid cause of action.

The trial court also rejected plaintiffs' claim that they lost $1 million in profits because they were forced to abandon plans for the preschool and day care center. The court found that plaintiffs failed to show with reasonable certainty that the new operations would be profitable, rendering the lost profits claim speculative. However, the court awarded reliance damages totaling $22,155, consisting of fees paid for building and electric pole relocation permits as well as the cost of the pole relocation. The court also awarded $5,000 for payments made under the February 2014 contract and $192.34 paid to reimburse defendants for print fees. Finally, asserting that the Civil Code left prejudgment interest to its discretion, the trial court denied such interest because it "did not hear evidence pertaining to the appropriate interest rate which should apply."

In the statement of decision, the trial court also held that plaintiffs were entitled to attorney's fees under Civil Code section 1717 because the February 2014 contract contained a provision allowing defendants to recover fees. In September 2023, after briefing and oral argument, the trial court awarded plaintiffs $135,575 in attorney's fees as well as $8,427.50 in costs.

Defendants timely noticed appeals from both the judgment and the order awarding fees and costs. Plaintiffs also timely noticed a cross-appeal concerning the denial of prejudgment interest. Defendants subsequently moved to consolidate their appeals. Deeming this to be a request to consider the appeals together, this court granted the motion.

## II. DISCUSSION

On appeal defendants argue that plaintiffs' contract, covenant of good faith and fair dealing, and fiduciary duty claims all should have been denied and that the attorney's fees and costs awards were excessive. Plaintiffs in turn cross-appeal the denial of their request for prejudgment interest on damages. We address each issue in turn.

5

### A. The February 2014 Contract

The trial court found that defendants breached the February 2014 contract by failing to submit a building permit in a reasonable period of time and awarded over $27,000 in reliance damages. Defendants challenge these rulings on a number of grounds. As explained below, we reject most of the challenges, but conclude that the trial court erred in holding Shen liable under the contract based solely on his position with LRS, and we remand for consideration of the alter ego argument not reached by the trial court.

#### 1. Breach

The trial court found that defendants breached the February 2014 contract by failing to submit a satisfactory building permit application before the related use permit expired and rendered the building permit application moot. Plaintiffs contend that the trial court erred because the contract did not specify a time for performance and plaintiffs proffered no expert testimony what a reasonable time would be. We disagree. Even without expert testimony, the trial court had a substantial basis for finding that the building permit application should have been submitted before the use permit expired and rendered the application useless.

In a contract, "[i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed." (Civ. Code, § 1657.) "[T]he reasonableness of time for performance is a question of fact, which depends on the circumstances of the particular case." (*Eidsmore v. RBB, Inc.* (1994) 25 Cal.App.4th 189, 198 [citing *Lyon v. Goss* (1942) 19 Cal.2d 659, 673].) As California courts have long recognized, accompanying every contract is a duty to "perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done." (*North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 774 & fn. 6; *Roscoe Moss Co. v. Jenkins* (1942) 55 Cal.App.2d 369, 376.) Accordingly, where a promisor knows, or

6

should know, that a delay will render performance valueless, the delay breaches the contract.  (*Leonard v. Rose* (1967) 65 Cal.2d 589, 592-593.)

The trial court had ample grounds for finding that Shen unreasonably delayed submitting the final building permit application until after the use permit had expired. Shen does not dispute that he knew at the time of contracting that there was a use permit and that a building permit could be obtained only while such a permit was in effect.  Shen also admittedly knew that Cupertino limits the number of extensions allowed for each use permit.  Based on this evidence, a reasonable trier of fact could have found that Shen knew, or should have known, that the building permit application should have been filed before the use permit expired and, if there was a significant delay in filing the application, should have inquired when that deadline was.  Nevertheless, after the initial application was denied in March 2014, Shen waited eight months to file a second application, and, when the second application was denied, another seven months to submit a third application in July 2015—one month after the use permit had expired and rendered the building permit application valueless.  Accordingly, substantial evidence supports the trial court's conclusion that Shen breached the February 2014 agreement by taking an unreasonable amount of time to submit a satisfactory building permit application.

Defendants argue that it is not a matter of common knowledge how long a particular agency will take to act on application and therefore without expert testimony the trial court could not find that Shen failed to act with the skill and diligence demanded of a professional architect.  While that may be true, the issue here is not whether Shen committed professional malpractice.  It is whether he failed to perform his contractual obligations within a reasonable period of time.  No special skill or knowledge was needed to find that it was unreasonable for Shen to wait to file the building permit application until the use permit had expired and rendered the application useless.

Accordingly, we uphold the trial court's finding that LRS breached the February 2014 contract by not submitting the building permit application within a reasonable period of time.

## 2. *Damages*

The trial court awarded $27,347.34 in damages, including $22,155 in damages incurred in reliance on the February 2014 contract and $5,192.34 in payments made under the contract to defendants. Defendants challenge this award on several grounds. They argue that plaintiffs failed to establish that the damages awarded were foreseeable or that they were proximately caused by plaintiffs' breach. It is not clear that the objections were raised below, and the authorities cited by plaintiffs in arguing that damages must be foreseeable involve "special," or consequential, damages—not the reliance and restitutionary damages awarded here. (See, e.g., *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 753-754 [noting that contract damages are generally divided into "general damages (sometimes called direct damages) and special damages (sometimes called consequential damages)"]; see generally Rest.2d Contracts, § 344 [distinguishing between expectation, reliance, and restitutionary interests].) In any event, defendants' arguments fail because the trial court awarded damages for readily foreseeable aspects of the school expansion project: permit fees, relocation of an electric pole that needed to be moved for the construction, and payments to defendants for services and expenses.

Defendants also assert that no evidence was presented at trial showing that plaintiff Zou suffered any damages. This argument has been waived. On appeal, " 'it is presumed that the evidence is sufficient to support [the trier of fact's] factual findings,' " and to overcome the presumption "the appellant is ' " 'required to set forth in [his] brief all the material evidence on the point and *not merely* [*his*] *own evidence*.' " ' " (*Symons Emergency Specialities v. City of Riverside* (2024) 99 Cal.App.5th 583, 598.) Defendants have not satisfied their requirement. Although their opening brief points to documents

8

supporting their contention that Omei Academy wrote checks to Shen, defendants simply ignore Zou's testimony at trial that he paid Shen, made one payment to Shen in cash, and paid for permits and other expenses. Except for the cash payment, this testimony does not appear to have been disputed. The testimony is also plainly material, and defendants' failure to summarize it forfeits the claim that the trial court's findings were not supported by sufficient evidence. (*Ibid*.; see also *Chicago Title Ins. Co. v. AMZ Insurance Services, Inc*. (2010) 188 Cal.App.4th 401, 415 ["If the appellant fails to fairly state all material evidence, we may deem waived any challenge based on insufficiency of the evidence."].)

Finally, defendants note that they asserted a failure-to-mitigate affirmative defense in their answer, which the statement of decision failed to address. However, it is unclear whether defendants raised this defense at trial. Even more important, defendants have not shown that they should have prevailed on this defense. Unless a party brings ambiguities or omissions in the statement of decision to the trial court's attention, "[t]he doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment," provided that the implied finding is supported by substantial evidence. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58; see *Acquire II, Ltd. V. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.) Moreover, where, as with affirmative defenses, the party appealing a finding bears the burden of proof, under the substantial evidence standard, that party must show that it presented evidence that " 'was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) Plaintiffs have not satisfied these requirements: Indeed, they have failed to show either that they informed the trial court that the statement of decision omitted their mitigation defense or that this defense was supported by compelling, uncontradicted evidence.

9

### 3. *Omei Academy*

Defendants object that one of the plaintiffs, Omei Academy, was not a party to the February 2014 contract and lacks standing to sue for breach of contract. Although Defendants asserted in their answer that *both* plaintiffs lacked standing, as defendants implicitly conceded in their reply, they did not argue that Omei Academy was not a party to the contract at any point in the trial court. As a result, the trial court did not have the chance to consider whether Omei Academy was the "Omei Learning Center" identified in the contract. We therefore conclude that defendants' objection to Omei Academy suing for breach of the February 2014 contract has been forfeited. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 (*Hewlett-Packard*) [" ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal . . . ." ' "]; see also *Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569 (*Findleton*) [" 'In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.]' "].)

Defendants assert that standing may be raised for the first time on appeal. However, even if Omei Academy is not a party to the February 2014 contract, as a potential third-party beneficiary it has standing to sue for breach of the contract. A third party may sue for breach of contract if three conditions are satisfied: (1) "the third party would in fact benefit from the contract," (2) "a motivating purpose of the contracting parties was to provide a benefit to the third party," and (3) "permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and reasonable expectations of the contracting parties." (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.) Each of these conditions appears satisfied here. First, the February 2014 contract would have benefited Omei Academy had defendants performed because Omei Academy owned the school that was to be expanded using the building permit that LRS promised to obtain. Second, a

10

motivating purpose of the parties to the February 2014 contract was to provide this benefit: Even if Shen did not know the specific entity that owned Zou's school, because the school's address is listed on the contract, he knew that the purpose of the work promised in the contract was to expand the school. Third, permitting Omei Academy to enforce the contract is consistent with the objective of the contract and the reasonable expectations of the parties. Indeed, Omei Academy, not Zou or "Omei Learning Center," paid Shen, and defendants offer no reason why they would not have expected the party paying them to enforce the February 2014 contract. As a consequence, whether or not Omei Academy was a party to the February 2014 contract, it arguably was a third-party beneficiary and had standing to sue for breach of the contract.

We therefore conclude that defendants have not raised a standing issue and they forfeited their objection that Omei Academy was not a party to the February 2014 contract by failing to raise it below.

### 4. *Eddy Shen*

Although the February 2014 contract was between Zou, Omei Academy, and LRS, plaintiff sued Eddy Shen, LRS's president, as well as LRS for breach of the contract. Noting that officers and directors of a corporation "may be . . . liable if they ordered, authorized, or participated in the corporation's tortious conduct," the trial court held Shen "personally liable" for breach of the February 2014 contract, apparently because he was the president of LRS and signed the contract on its behalf. Defendants argue that this ruling is erroneous because corporate officers who participate in a corporation's misconduct are subject to tort, not contract, liability. We agree. However, we remand the issue of Shen's liability under the February 2014 contract to consider an argument that the trial court did not reach: that LRS was an alter ego of Shen.

As the trial court recognized, "[d]irectors and officers of a corporation . . . may become liable [for a corporation's torts] if they directly ordered, authorized or participated in the tortious conduct." (*Wyatt v. Union Mortgage Company* (1979) 24

11

Cal.3d 773, 785 [imposing liability on officers and directors for breach of fiduciary duty and civil conspiracy]; *Filet Menu, Inc. v. C.C.L. & G. Inc.* (2000) 79 Cal.App.4th 852, 866 ["Having been found to be a perpetrator of the tortious conduct," the principal shareholder in a corporation is "independently responsible for his commission of the tort."].) However, it does not follow that an officer or director of a corporation may be held liable for breach of a contract simply because the officer or director participated in the breach. Indeed, as the Supreme Court has recognized, "[t]he legal fiction of the corporation as an independent entity—and the special benefit of limited liability permitted thereby—is intended . . . to insulate officers from liability for corporate contracts . . . ." (*Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 507-508.) Accordingly, "[d]irectors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually." (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 595.) Accordingly, the trial court erred in holding Shen personally liable for LRS's breach of contract simply because he was an officer of the corporation and participated in its breach.

In the trial court, plaintiffs contended that Shen could be held liable for breach of the February 2014 contract under an alter ego theory. Although the trial court did not consider this theory, it is valid: A corporate officer may be held liable for breach of a corporation's contract if the corporation is found to be an alter ego of the officer. (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811-812; see also *Wenban Estate, Inc. v. Hewlett* (1924) 193 Cal. 675, 696 ["[W]hen necessary to . . . prevent a palpable injustice, the law and equity will intervene and cast aside the legal fiction of independent corporate existence, as distinguished from those who hold and own the corporate capital stock, and deal with the corporation and stockholders as identical entities with identical duties and obligations."].) Accordingly, we remand to the trial court to consider whether LRS was Shen's alter ego.

12

## B. Fiduciary Duty

The trial court concluded that Shen owed plaintiffs a fiduciary duty, which he breached in failing to submit a building permit in a reasonable amount of time and in misrepresenting himself to be an architect after his license lapsed. Defendants argue the judgment on this cause of action should be reversed because at trial plaintiffs offered no evidence to support it and because plaintiffs are not entitled to recover tort damages for the same harm they suffered by breach of contract. Plaintiffs do not seriously contest these arguments. To the contrary, plaintiffs concede that they "litigated and tried the case solely as a breach of contract case," "no separate testimony or evidence related to fiduciary duty was presented," and "[n]o tort damages of any kind were ever awarded." Accordingly, we conclude that plaintiffs' breach of fiduciary duty claim should be denied.

## C. Good Faith and Fair Dealing

We similarly conclude that plaintiffs' good faith and fair dealing claim should be denied. Defendants argue that this claim should have been denied because it duplicates plaintiffs' claim for breach of the terms of the February 2014 contract. In response, Plaintiffs note that the contract invested defendants with "discretionary power," but they fail to differentiate the breach of the covenant that they alleged from the breach of contract that they also alleged. Consequently, plaintiffs have not shown the necessary distinct violation of the covenant of good faith and fair dealing. (See, e.g., *Guz v. Bechtel Nat'l, Inc*. (2000) 24 Cal.4th 317, 352-353 ["[I]nsofar as the employer's acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous" and should be dismissed.].)

## D. Attorney's Fees

Defendants also challenge the attorney's fees awarded on plaintiffs' contract claim. Specifically, they argue that the fee provision in the February2014 contract

13

contains a condition precedent that was unsatisfied and that the amount of the fees was excessive.  These arguments were neither properly preserved nor presented.

### 1.  *Condition Precedent*

The February 2014 contract contains an attorney's fees provision: "In the event after issuance of building permit Client must pay entire fee, it becomes necessary to enforce the terms of this Agreement, the Architect shall be entitled to the recovery of its attorneys' fees and costs associated with such enforcement proceedings."  Although this provision benefits only LRS, the "Architect" under the contract, the trial court awarded fees under Civil Code section 1717, which permits a party prevailing on a contract claim to recover fees under a contract allowing a counterparty to the contract to recover fees.[2] On appeal defendants argue that the February 2014 contract's fee provision applies only after issuance of a building permit, which did not occur here.

However, defendants did not make this argument in their opposition to plaintiffs' motion to fix fees, and there is no mention of it in the settled statement concerning the fee hearing.  In addition, on appeal, defendants cite only a single decision, *Leamon v. Krajkiewcz* (2003) 107 Cal.App.4th 424 (*Leamon*), in arguing that conditions precedent to an award of attorney's fees provision may be enforced under Civil Code section 1717. However, *Leamon* ruled that enforcement was permissible only after determining that "enforcement of the condition to recovery of attorney fees does not conflict with the concept of mutuality of remedy under the facts of this case." (*Leamon*, at p. 433; see also *id.* at p. 432 [noting the "concept of mutuality of remedy embodied in the provision of Civil Code section 1717"].)  Far from showing there is no conflict here, defendants

---

[2] Civil Code section 1717 provides in pertinent part: " In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civil Code, § 1717, subd. (a).)

simply quote the conclusion reached in *Leamon* after analyzing the facts of that case. (*Id.* at p. 433 ["In that sense, the imposition of a condition precedent on the recovery of attorney's fees is mutual and reciprocal."]).

Accordingly, defendants have forfeited the argument that plaintiffs failed to satisfy a condition precedent on the recovery of attorney's fees. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1004 [an " 'appellate court can treat as *waived* or *meritless* any issue that is *not supported by pertinent or cognizable legal argument or proper citation of authority*' "]; *Hewlett-Packard, supra*, 65 Cal.App.4th at p. 548; *Findleton, supra*, 27 Cal.App.5th at p. 569.)

### 2. *Excessiveness*

In addition to arguing that no fees should have been awarded, Defendants contend that the fees awarded were excessive because they included fees attributable to work performed on non-contract claims. However, defendants do not cite any evidence that the trial court awarded plaintiffs fees for work that was unrelated to and not in any way intertwined with plaintiffs' contract claim; indeed, their briefing on appeal does not cite any of the evidence presented to the trial court. Such conclusory argument is inadequate. (See, e.g., *Helm v. City of Los Angeles* (2024) 101 Cal.App.5th 1219, 1228, fn. 5 ["It is not our role to scour the record to find evidence to support [the appellant's] contention . . . ."]; *WFG National Title Insurance Company v. Wells Fargo Bank* (2020) 51 Cal.App.5th 881, 894 ["we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record"].) "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Accordingly, defendants have forfeited their excessiveness argument.

### E. Costs

In addition to attorney's fees, the trial court awarded plaintiffs $8,427.50 in costs. Defendants contends that this award is excessive because it improperly includes costs for mediation and court call hearings. However, defendants did not mention these costs in their opposition to plaintiffs' motion to fix fees and costs, and there is no evidence in the record that they otherwise opposed plaintiffs' memorandum of costs. In addition, in their briefing on appeal, plaintiffs assert that mediation and court call hearing costs are not recoverable under Code of Civil Procedure section 1033.5 without any analysis or explanation. As a consequence, defendants have neither preserved nor properly presented their challenge to the costs award. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 845; *Hewlett-Packard*, *supra*, 65 Cal.App.4th at p. 548; *Findleton*, *supra*, 27 Cal.App.5th at p. 569.)

### F. Prejudgment Interest

Asserting that the Civil Code makes prejudgment interest "at the discretion of the court," the trial court denied plaintiffs prejudgment interest because it "did not hear evidence pertinent to the appropriate interest rate" and therefore could not "assess the appropriate interest." In their cross-appeal, plaintiffs argue that the trial court erred both in assuming that it had discretion to deny prejudgment interest and in suggesting that they failed to propose an appropriate interest rate. We agree.

Plaintiffs are entitled to prejudgment interest because both the timing and the amount of the damages that the trial court awarded was certain. As a general rule, prejudgment interest is mandatory where the damages suffered by a plaintiff are "liquidated," that is, certain in both timing and amount. Absent certain exceptions inapplicable here, a plaintiff entitled to recover damages that are certain in both timing and amount also "is entitled" to prejudgment interest: "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover

16

interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt." (Civil Code, § 3287, subd. (a).) Where damages are certain in timing and amount, a trial court "has no discretion, but must award prejudgment interest upon request, from the first day there exists both a breach and a liquidated claim." (*North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 828.) Here, as the trial court awarded plaintiffs damages based on specific payments made on specific dates, plaintiffs' damages were certain in both timing and amount—and therefore liquidated—and pre-judgment interest was mandatory.

In addition, plaintiffs did not waive their right to prejudgment interest by failing to suggest an appropriate interest rate. Following the trial court's instruction, plaintiffs requested prejudgment interest in their proposed statement of decision. In addition, following the Civil Code, which generally provides for interest "at a rate of 10 percent per annum after a breach" (Civ. Code, § 3289, subd. (b)), plaintiffs proposed a 10 percent rate. While the Civil Code also allows plaintiffs to seek interest at "[a]ny legal rate of interest stipulated by a contract" (Civ. Code, § 3289, subd. (a))—and plaintiffs subsequently sought such a rate in objecting to the proposed statement of decision— nothing in the Civil Code compelled plaintiffs to present evidence concerning such a rate. Instead, under Civil Code section 3289, prejudgment interest should have been awarded at the default 10 percent rate.

We leave to the trial court to consider in the first instance whether plaintiffs should have been permitted to seek a higher, contractual interest rate for the first time in objections to the proposed statement of decision. We likewise leave to the trial court to consider in the first instance defendants' arguments that, in spite of the trial court's instructions, plaintiffs were required to seek prejudgment interest in a motion and that the damages awarded plaintiffs were not certain because plaintiffs sought other, greater damages that were denied.

17

### III. DISPOSITION

The judgment against defendant Eddy Shen is reversed as to the first cause of action in the complaint for breach of contract, and the cause of action remanded to the trial court with instructions to determine whether Shen is liable for breach of contract on an alter ego theory. The judgment against defendants Shen and LRS Associates Architecture and Planning, Inc. is reversed as to the second cause of action for breach of the covenant of good faith and fair dealing and the fourth cause of action for breach of fiduciary, and the trial court is instructed to enter judgment in favor of defendants as to these causes of action. The judgment is reversed as to denial of plaintiffs' request for prejudgment interest, and the request is remanded to the trial court with instructions to award prejudgment interest consistent with this opinion. The judgment is otherwise affirmed. The parties shall bear their own costs on appeal.

18

_____
BROMBERG, J.

WE CONCUR:

_____
GREENWOOD, P. J.

_____
DANNER, J.

*Omei Taichi Culture Academy, Inc., et al. v. Shen et al.*
H051149
*Omei Taichi Culture Academy, Inc., et al. v. Shen et al.*
H051491

19