Filed 4/24/26  Newborn v. City of L.A. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| LAJUNE SHANNEL NEWBORN, | B335443 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV42704) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Graciela Freixes, Judge.  Reversed, with directions.

Law Office of Herb Fox, Herb Fox; Levin & Nalbandyan and Harry Nalbandyan for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Assistant City Attorney, and Sara Ugaz, Deputy City Attorney, for Defendant and Appellant.

_____

# INTRODUCTION

LaJune Newborn appeals from a judgment notwithstanding the verdict (JNOV) entered in favor of the City of Los Angeles (City). Newborn was seriously injured when a uniformed police officer riding a Los Angeles Police Department (LAPD) motorcycle sped in front of her vehicle as she was driving on the freeway and kicked up a large metal object that broke through her windshield and struck her in the head. A jury found in favor of Newborn in a special verdict and awarded her $2.5 million in damages. Newborn challenges the trial court's order granting the City's motion for JNOV. The City filed a protective cross-appeal from the denial of its motion for new trial. We reverse the judgment entered in favor of the City and direct the court to enter an order denying JNOV and the request for a new trial and to reinstate judgment in favor of Newborn.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Accident*

On December 19, 2018, Newborn was driving toward Santa Clarita in the carpool lane of the 14 freeway at approximately 2:40 p.m. when a uniformed officer riding a police motorcycle passed in front of her vehicle from the right and merged into her lane.[1] The motorcycle kicked up metal debris, which broke through Newborn's windshield and struck her in the

---

[1]   Solo drivers were allowed to occupy the carpool lane before 3 p.m.

head. Newborn lost consciousness. Her car first collided with the center divider and then hit the right shoulder. The car came to rest across the lanes on her side of the freeway. Newborn was bleeding profusely from her head and was transported to the hospital. The motorcyclist, apparently unaware of the accident, rode away. The personal identity of the motorcyclist is unknown.

LAPD Officer Joseph Barr was riding his LAPD motorcycle behind Newborn. He witnessed the accident, stopped to render aid, and provided a statement to California Highway Patrol Officer Korey Reynolds at the scene. Officer Reynolds noted in his accident report that Officer Barr identified the motorcyclist who kicked up the debris as an LAPD officer.

The debris was found in Newborn's car and identified as a leaf spring from a commercial truck. It weighed five to six pounds and was nine and one-half inches long, two and one-half inches wide, and less than an inch thick.

B.    *Trial Proceedings*

Newborn filed a personal injury lawsuit against the City, the State of California, the County of Los Angeles, and the City of Santa Clarita. Newborn alleged the defendants were liable under a theory of respondeat superior for the motorcyclist's negligent operation of the motorcycle and for negligently entrusting the motorcycle to the unknown officer. Trial commenced on March 6, 2023, and proceeded against the City only; the other defendants were dismissed before trial.

Newborn testified she was driving approximately 65 miles per hour when she observed two motorcycle officers in her rearview mirror. One "zoomed" past her; Newborn identified the passing motorcyclist as an LAPD officer who was wearing a black

3

uniform, a bulletproof vest with "POLICE" across the back, and a white helmet with black on it.  She testified, "the bike was white with gold lettering on it and had a bunch of guns on the side." Newborn explained she drove alongside LAPD officers "every day" during her commute, and she was thus able to identify the motorcycle that crossed in front of her as an LAPD motorcycle. On cross-examination, defense counsel read Newborn's deposition testimony to her in which she did not identify the motorcyclist as an LAPD officer or describe seeing black and gold on the motorcycle.  Newborn stated she did not remember what she said at her deposition.

Newborn testified she lost consciousness when something hit her in the head after the motorcyclist passed her.  She recalled waking up to Officer Barr rendering aid.  Newborn testified her eye socket was "crushed," and she had to undergo surgery to repair it.  She described the lasting effects of the accident, including daily migraines, forgetfulness, nerve pain, vertigo, and panic attacks.  Newborn also presented expert testimony regarding her injuries.

Officer Reynolds, who investigated the accident, testified at trial that he prepared his report of the accident according to his standard practice, but that he had no independent recollection of the contents of his report.  Officer Reynolds referred to his report during his testimony to refresh his memory and testified Newborn told him at the hospital that a police motorcycle passed her and kicked up the debris that broke through her windshield. Officer Reynolds also testified Officer Barr identified the motorcyclist as an LAPD officer at the scene of the accident.

Officer Barr denied he identified the motorcyclist as an LAPD officer.  Officer Barr stated that Officer Reynolds did not

4

appear "real[ly] interested" in talking to him because he was not taking notes, spoke to him for "about a minute," and "was trying to walk away."

Officer Barr further testified he was at an LAPD training session for motorcycle officers on the day of the accident and was heading home. He stated he was traveling approximately 70 miles per hour, and he estimated Newborn was traveling at approximately the same speed. He saw a black and white police motorcycle ahead of Newborn. Officer Barr testified he had a clear view of the motorcycle and Newborn's car because he and the other motorcycle were driving closer to the double yellow lane lines on the right while Newborn's car was centered in the lane. He stated he saw the motorcycle kick up debris, which hit Newborn's car. Officer Barr testified the motorcyclist did not appear to react to the debris and did not look back, change speed, or change lanes.

When the debris hit Newborn's car, Officer Barr testified he saw the car collide with the center rail at approximately 90 miles per hour and then veer to hit the right shoulder at approximately 50 miles per hour. Officer Barr stopped to render aid to Newborn. Shortly afterward, several other LAPD motorcycle officers, who had also been at the training, stopped to help direct traffic. Officer Barr and other witnesses testified that many law enforcement officers lived in the Santa Clarita and Antelope Valley area.

Officer Barr also testified the LAPD had a policy allowing its motorcycle officers to ride their motorcycles home unless the officer was injured. When Officer Barr was asked whether he was still on duty when he rode his motorcycle home, he responded, "Sometimes yes, but most of the time no." Officer

5

Barr explained he was on duty only if something occurred that required his assistance. Officer Barr described his job as a motorcycle officer, stating it involved traffic enforcement, including writing tickets and investigating traffic collisions. Officer Barr stated it was "[v]ery common" in his experience to hit debris while riding a motorcycle on freeways in Southern California. Officer Barr also testified many other police departments wore similarly colored uniforms and rode similar motorcycles as the LAPD.

LAPD officer Brian Wilson testified regarding the training received by LAPD motorcycle officers, including what was outlined in the LAPD training manual. Officer Wilson testified motorcycle officers were trained to be aware of and avoid debris. They were also trained to go safely over debris if it could not be avoided. Officer Wilson stated, "personally, I stay out of the car pool lane because that's where all the trash goes to." Officer Wilson confirmed many other law enforcement agencies rode the same motorcycles and wore similar uniforms as the LAPD.

The trial court instructed the jury on theories of vicarious liability and respondeat superior. The court also used CACI No. 3720 to instruct the jury on the scope of employment:

> Lajune Newborn must prove that the motorcyclist ahead of Lajune Newborn was acting within the scope of their employment when Lajune Newborn was harmed.
>
> Conduct is within the scope of employment if:
>
> (a) It is reasonably related to the kinds of tasks that the employee was employed to perform; or
>
> (b) It is reasonably foreseeable in light of the employer's business or the employee's responsibilities.

6

The trial court denied Newborn's request to instruct the jury on the "going-and-coming" rule in CACI No. 3725.[2]

The special verdict form asked the jury to answer the following questions: (1) "Was the motorcyclist ahead of Lajune Newborn's vehicle an employee of the Los Angeles Police Department?"; (2) "Was the motorcyclist ahead of Lajune Newborn's vehicle acting within the scope of their employment with the Los Angeles Police Department at the time of the incident?"; (3) "Was the motorcyclist ahead of Lajune Newborn's vehicle negligent?"; (4) "Was the negligence of the motorcyclist ahead of Lajune Newborn's vehicle a substantial factor in causing

---

[2] CACI No. 3725 states: "In general, an employee is not acting within the scope of employment while traveling to and from the workplace. But if an employer requires an employee to drive to and from the workplace so that the vehicle is available for the employer's business, then the drive to and from work is within the scope of employment. The employer's requirement may be either express or implied. [¶] The drive to and from work may also be within the scope of employment if the use of the employee's vehicle provides some direct or incidental benefit to the employer. There may be a benefit to the employer if (1) the employee has agreed to make the vehicle available as an accommodation to the employer, and (2) the employer has reasonably come to rely on the vehicle's use and expects the employee to make it available regularly. The employee's agreement may be either express or implied." The court declined to give CACI No. 3725 because it determined the jury instruction addressed the required use of a vehicle, rather than permissive use, and the use of an employee's personal vehicle rather than the employer's vehicle. Neither party challenges this ruling on appeal.

7

harm to Lajune Newborn?"; (5) "What are LaJune Newborn's damages?"

Newborn's theory at trial was that the unidentified motorcyclist was an LAPD officer who was traveling home on an LAPD-issued motorcycle. Newborn argued to the jury at closing that the officer was traveling in excess of the speed limit and was going too fast to avoid the leaf spring in the road. Newborn's counsel also made the following argument to the jury regarding the scope of employment inquiry:

"[T]he second question we have to answer in this case is was that motorcyclist ahead of Ms. Newborn's vehicle in the course and scope of their employment when this happened? This is probably the second easiest question to answer on this verdict form.

"And here's the law. It's instructive. The law says that conduct, whatever you're doing is within the course and scope of employment if one of these conditions are met. The first condition is the conduct riding the motorcycle on a freeway, is it reasonably related to the kinds of tasks that an LAPD officer is employed to perform? We heard the testimony. The bike has guns on it, uniform. LAPD's manual requires that they assist when they see something. It's a requirement. I asked Officer Barr if you see something and you assist, are you on duty? He says, yes, of course. That's one arm. If you prove that, then the answer to this question is yes very easy. The second one is, is it reasonably foreseeable in light of the employer's business? [¶] And this is kind of funny because LAPD is in the business of policing, not your typical business like a grocery store or the employee's responsibilities. There are policeman or a woman, so let's look at the evidence in this case, so it's 100 percent

8

undisputed in this case that LAPD officers get to take their bikes home. [¶] It's a privilege. They love it. They can ride in the carpool lanes. They get home faster. And that's the question I asked Barr, hey, if you're on your bike and something happens, does it require you to do something? He says yes. It's their duty. So if you're wearing the uniform, you have the guns. You're on the bike. You're in the course and scope of employment."

The City took the position at trial that Newborn failed to meet her burden to prove the motorcyclist was an LAPD officer, was acting in the scope of employment, or was negligent for failing to see a piece of debris that blended into the roadway. In particular, counsel argued Newborn's identification was not credible, and Officer Reynolds's report was contradicted by Officer Barr, highlighting that many law enforcement agencies in the area wore similar uniforms and rode the same motorcycle. In closing arguments, counsel for the City countered plaintiff's characterization of the scope of employment evidence as follows: "What is the evidence that that front motorcycle rider was acting within the course and scope of their employment with the LAPD? Even if -- let's say you say it was an officer from LAPD, you know how much evidence there is that that person was in the course of employment at the time the accident happened? Zero. The burden of proof is on plaintiff. What's the evidence that that person was working? The officers are allowed to take their motorcycles home. That person -- if it was an LAPD officer, he or she could have been on their motorcycle doing anything else, not on the job.

"There is zero evidence that that front motorcycle rider was in the course and scope of employment. . . . [¶] . . . Ms. Newborn must prove that the motorcyclist ahead of Ms. Newborn was

9

acting within the scope of their employment and then that's what you'd consider right there, A and B. I'm going to ask you to consider what evidence you have received, not innuendo and smoke, but evidence you have that that front rider was an employee of LAPD. There is none."

During its deliberations, the jury requested and received a readback of testimony by Officer Reynolds and Officer Barr. The jury also asked the following questions: "When an LAPD officer is driving home in a uniform on a motorcycle and there is no accident is he/she on duty? Is the[ir] radio on? If their radio is on, are they required to respond? Is he or she in the scope of employment on the way home?" After conferring with counsel, the trial court responded, "Your decision must be based only on the evidence presented in trial." The jury then requested a readback of "plaintiff's closing argument about acting within the scope of employment. Also include defense clos[ing]. Question #2 specifically." The trial court again conferred with counsel and responded, "The arguments of counsel are not evidence. Please refer to CACI jury instruction 3720."

The jury returned a verdict in Newborn's favor, answering "yes" to each of the questions on the special verdict form. When polled, nine jurors voted to answer "yes" on question 2 regarding the scope of employment, and three voted to answer "no." The jury awarded $73,000 in future economic loss/future medical expenses, $225,000 in past non-economic loss, and $2,202,000 in future non-economic loss for a total award of $2.5 million.

C.    *Post-trial Proceedings*

The City filed motions for JNOV and new trial, primarily arguing insufficient evidence supported the findings that the

10

motorcyclist was an LAPD officer or that the motorcyclist was acting within the scope of employment at the time of the accident. In its motion for JNOV, the City argued the motorcyclist was not acting within the scope of employment at the time of the accident under the going-and-coming rule and that there was no nexus between the motorcyclist's negligence and employment with LAPD. In its new trial motion, the City challenged the sufficiency of the evidence on the jury's findings that the unidentified motorcyclist was an LAPD employee, that the motorcyclist was acting within the scope of employment at the time of the accident, and that the motorcyclist was negligent.

At the hearing on the post-trial motions, the court orally granted the JNOV motion. It declined to reverse the jury's finding that the motorcyclist was an LAPD employee. The court stated the "gravamen" of the City's JNOV motion was its challenge to the jury's finding that the motorcyclist in front of Newborn was acting within the scope of employment at the time of the accident. The court ruled there was no substantial evidence or reasonable inferences to be drawn from the evidence to support the jury's finding that the motorcyclist was acting within the scope of employment with the LAPD at the time of the accident. The court stated the only evidence at trial as to the scope of employment was Officer Barr's testimony, which it summarized as follows:

"Officer Barr's testimony was unequivocal in describing that the only time an officer is on duty when riding his motorcycle home is when he renders assistance after seeing something that requires it. Officer Barr's answer to plaintiff's counsel's question, quote, and when you assist, you're then on duty; isn't that correct, end of quote, confirms that to be the case.

11

It is undisputed that the front motorcycle rider did not engage in rendering assistance at any time relevant to this action. No other evidence was presented to establish that the unknown motorcyclist was on duty at the time of the accident.

"In describing his observations of the front motorcycle after it went over the debris, it is clear that the driver was unaware of the events that transpired after the debris flew up from the road and impacted the plaintiff's vehicle. Accordingly, even if the unidentified driver of the front motorcycle was an LAPD officer, which the jury found he was, plaintiff's counsel's questioning acknowledges that LAPD requires an officer to assist only when they see something." The court ruled that the evidence presented at trial, specifically Officer Barr's testimony, was insufficient to support a finding the motorcyclist was acting within the scope of employment with the LAPD at the time of the accident.

Newborn disputed the court's characterization of the evidence, asserting Officer Wilson and Officer Barr testified about the different roles that LAPD motorcycle officers play and their obligation to respond to calls made to the radios embedded in their helmets. The court was not persuaded to change its ruling. It vacated the judgment in favor of Newborn and entered judgment in favor of the City. It took the City's motion for new trial off calendar as moot.

Newborn timely appealed from the JNOV. The City timely filed a protective cross-appeal from the court's ruling on its new trial motion.

# DISCUSSION

## A.    *JNOV*

Newborn contends the trial court erred when it vacated the jury's verdict and granted the City's JNOV motion on the ground that there was no evidence to support the jury's special verdict finding that the motorcyclist was acting within the scope of employment at the time of the accident.  We agree.

### 1.    *Standard of Review*

" 'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.  [Citation.]  [¶] . . .  As in the trial court, the standard of review [on appeal] is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion.' "  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770; accord, *Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 192; *Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1045 (*Markow*).)

"The court may not weigh evidence, draw inferences contrary to the verdict, or assess the credibility of witnesses.  The court must deny the motion if there is any substantial evidence to support the verdict.  [Citations.]  This court therefore may uphold the order granting judgment notwithstanding the verdict, and affirm the judgment based thereon only if, reviewing all the evidence in the light most favorable to [Newborn], resolving all conflicts, and drawing all inferences in her favor, and deferring to the implicit credibility determinations of the trier of fact, there was no substantial evidence to support the jury's verdict in her

favor. 'If the evidence is conflicting or if several reasonable inferences may be drawn,' the court erred in granting the motion and we must reverse." (*Begnal v. Canfield & Assocs.* (2000) 78 Cal.App.4th 66, 72-73.) "Our determination as to the requisite substantial evidence is de novo." (*Lurner v. American Golf Corp.* (2023) 97 Cal.App.5th 121, 133.)

### 2. *Doctrine of Respondeat Superior*

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208 (*Mary M.*).) "The doctrine of respondeat superior applies to public and private employers alike." (*Id.* at p. 209; see also Gov. Code, § 815.2, subd. (a) ["A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative"].)

"The doctrine is a departure from the general tort principle that liability is based on fault.  [Citation.]  It is ' "a rule of policy, a deliberate allocation of a risk." ' [Citations.]  Respondeat superior is based on ' "a deeply rooted sentiment" ' that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities." (*Mary M., supra,* 54 Cal.3d at p. 208.)  "[T]he central justification for respondeat superior [is] that losses fairly attributable to an enterprise—those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business." (*Farmers Ins. Group v. County of Santa Clara*

14

(1995) 11 Cal.4th 992, 1004 (*Farmers*).)  *Mary M.* articulated "three reasons for applying the doctrine of respondeat superior: (1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury."  (*Id.* at p. 209.)

"In California, the scope of employment has been interpreted broadly under the respondeat superior doctrine." (*Farmers, supra,* 11 Cal.4th at p. 1004.)  This has led California courts to formulate different tests to determine what conduct falls within the scope of employment.  *Musgrove v. Silver* (2022) 82 Cal.App.5th 694, 707 to 710 (*Musgrove*), collected cases and identified "four different tests for assessing whether particular acts should be deemed to be within the scope of employment and hence a basis for imposing vicarious liability": (1) the risk-focused test, (2) the foreseeability-focused test, (3) the benefit-and-custom-focused test, and (4) the public policy-focused test.  We address only the first two in this opinion because CACI No. 3720, the instruction given to the jury in this case, is based on these two tests.  (See *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 674-675 (*Bullock*) ["We review the sufficiency of the evidence to support a verdict under the law stated in the instructions given, rather than under some other law on which the jury was not instructed"].)  As stated, CACI No. 3720 asks whether the employee's conduct "is reasonably related to the kinds of tasks that the employee was employed to perform" or "reasonably foreseeable in light of the employer's business or the employee's responsibilities."

15

As *Musgrove* explains, the risk-focused test "focuses on whether the 'risk' engendered by the employee's allegedly tortious conduct is 'inherent in the working environment' or ' " ' "may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer.' " ' [Citations.] Given this focus, an employee's allegedly tortious conduct is deemed to be within the scope of employment only if that conduct is required by, engendered by, or an ' "outgrowth" ' of his employment. [Citations.] Put differently, there must be ' " 'a nexus between the employee's tort and the employment.' " ' [Citation.] This is why an employee's conduct is not within the scope of employment merely because he 'use[s] . . . property or facilities entrusted to him by' his employer." (*Musgrove, supra,* 82 Cal.App.5th at p. 708.)

The foreseeability-focused test "focuses on whether ' "the employee's [allegedly tortious] [ ]conduct could be *reasonably foreseen* by the employer." ' [Citation.] For these purposes, the concept of 'foreseeability' has a different—and, significantly, a narrower—definition than it does in tort law generally. Under this narrower definition, an employee's allegedly tortious conduct is sufficiently foreseeable to be deemed within the scope of employment only if, ' "*in the context of the particular enterprise,*" ' the employee's ' "conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." ' [Citations.] As the italicized language indicates, what matters is whether 'the employee's act is foreseeable *in light of the duties the employee is hired to perform*' [citations], and hence whether the plaintiff's injury is the type of injury 'that " 'as a practical matter [is] sure

16

to occur in the conduct of the employer's enterprise.' " ' " (*Musgrove, supra,* 82 Cal.App.5th at pp. 708-709.)

*Musgrove* noted there are "further refinements-slash-corollaries to these tests," including the going-and-coming rule. (*Musgrove, supra,* 82 Cal.App.5th at p. 707, fn. 5.) That rule states that an employer is generally not responsible for torts committed by an employee who is going to or coming from work. "The reason for this 'going and coming' rule is that 'the employment relationship is "suspended" from the time the employee leaves until he returns [citation], or that in commuting he is not rendering service to his employer [citation].' " (*Tryer v. Ojai Valley School* (1992) 9 Cal.App.4th 1476, 1481.) Although the jury's questions implicated the going-and-coming rule, the trial court expressly directed it to only consider CACI No. 3720. As stated, our review is limited to whether substantial evidence supports the jury's findings in the special verdict. (*Sukoff v. Lemkin* (1988) 202 Cal.App.3d 740, 743.)

B. *Substantial Evidence Supports the Jury's Finding the LAPD Motorcyclist Was Acting Within the Scope of Employment*

1. *An officer's off-duty status does not solely determine whether tortious conduct is within the scope of employment*

The trial court granted JNOV because it concluded there was no evidence the LAPD motorcyclist was acting within the scope of employment based on Officer Barr's "unequivocal" testimony that the motorcyclist was not on duty at the time of the accident. But under well-established California law, whether a public safety officer is on duty or off duty is not the sole factor

17

that determines whether the officer's tortious conduct is within the scope of employment.  In short, whether the LAPD motorcyclist was acting within the scope of employment does not turn on whether the motorcyclist was on duty or not, and the trial court erred by grounding its JNOV ruling on the motorcyclist's off-duty status.

Several California authorities have examined whether, as a matter of law, an off-duty police officer's conduct falls within the scope of employment.  For example, in *Inouye v. County of Los Angeles* (1994) 30 Cal.App.4th 278, 280 (*Inouye*), the court reversed summary judgment for the County and held that "Los Angeles County's [ ] policy of deeming its off-duty safety police officers to not be engaged in the performance of their duties is ineffective to insulate the County from respondeat superior liability for the alleged wrongful conduct of an off-duty safety police officer in the course of making an arrest."  And in *Juarez v. San Bernardino City Unified School Dist.* (2024) 106 Cal.App.5th 1213, 1217, the court held that an off-duty police officer's misconduct while investigating a suspected theft of his cell phone after identifying himself as a police officer could fairly be regarded as an outgrowth of his employment and was not so unusual or startling that it would seem unfair to expose the District to liability, reversing an order sustaining a demurrer.

And in *Perez v. City and County of San Francisco* (2022) 75 Cal.App.5th 826, 841 (*Perez*), the court also reversed summary judgment entered in favor of the defendant city and held that an off-duty officer's negligent failure to secure an employer-approved firearm in an unattended vehicle after returning home from assigned training fell within the scope of employment.  *Perez* observed the officer brought his firearm while traveling to the

18

training because he was on duty and would be training near a county jail.  Under these circumstances, *Perez* found a jury could infer the officer thought he might be called to respond to an incident at the jail while he was off duty.  (*Id.* at p. 841.)  Accordingly, even if the LAPD motorcyclist in this case was off duty when Newborn was injured, the jury could still have reasonably found the motorcyclist was acting within the scope of employment based on the evidence before it.[3]

---

[3]    To be sure, an employer is not strictly liable for all acts by its employees during working hours or while on duty.  (See *Farmers, supra,* 11 Cal.4th at p. 997 [sexual harassment of a fellow deputy sheriff while on duty "is not a risk that may fairly be regarded as typical of or broadly incidental to the operation of a county jail," therefore "such conduct must be deemed to fall outside the scope of a deputy sheriff's employment"]; *Thorn v. City of Glendale* (1994) 28 Cal.App.4th 1379, 1383 [city fire marshal who entered plaintiff's business premises during working hours under color of authority was not acting within scope of employment when he set fire to the premises]; *Hoblitzell v. City of Ione* (2003) 110 Cal.App.4th 675, 683 [city building inspector and city police officer in civilian clothes staged fake building inspection during normal business hours for personal reasons; they were not acting within scope of employment].)

The California Supreme Court explained in *Farmers* that "an employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes. [Citations.]  Thus, if the employee . . . acts out of 'personal malice unconnected with the employment' [citation], or if the misconduct is not an 'outgrowth' of the employment [citation], the employee is not acting within the scope of employment.  Stated another way, '[i]f an employee's tort is personal in nature, mere presence

Having concluded the trial court granted JNOV based on incorrect reasoning, we now consider whether substantial evidence supports the jury's finding on scope of employment.[4]

2. *Substantial evidence supports the jury's finding on the scope of employment*

Under CACI No. 3720, the only jury instruction on scope of employment given at trial, Newborn could prove the LAPD motorcyclist's conduct fell within the scope of employment by proving that: "(a) [the conduct] is reasonably related to the kinds of tasks that the employee was employed to perform; or (b) [the conduct] is reasonably foreseeable in light of the employer's business or the employee's responsibilities." The jury found in her favor on the scope of employment issue in its special verdict, but it did not specify the basis.

Our review of the trial record reflects substantial evidence supports both. For purposes of JNOV, like the trial court, we

---

at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior.' [Citation.] In such cases, the losses do not foreseeably result from the conduct of the employer's enterprise and so are not fairly attributable to the employer as a cost of doing business." (*Farmers, supra,* 11 Cal.4th at pp. 1004-1005.)

[4] The City does not argue there are alternative theories that support affirming the JNOV. (See *Cal. Serv. Station Etc. Ass'n v. Am. Home Assur. Co.* (1998) 62 Cal.App.4th 1166, 1171 ["we are not bound by the trial court's reasons; if correct upon any theory of applicable law, the JNOV must be affirmed"].) As we explain below, it is estopped from relying on and/or waived the going-and-coming rule.

accept the jury's special verdict finding the unidentified motorcyclist was an LAPD officer. Newborn testified at trial that the LAPD motorcyclist was wearing an LAPD uniform, riding an LAPD motorcycle, and carrying firearms.[5] She further testified she yielded to the LAPD motorcyclist when the motorcyclist "zoomed" past her because the motorcyclist was a law enforcement officer. Officer Barr testified LAPD policy allowed motorcycle officers to ride their motorcycles home, but they were required to respond to an emergency or other similar situations. He also testified an LAPD motorcycle officer's typical duties involved traffic enforcement, including writing tickets and investigating traffic collisions. From this evidence, the jury could reasonably infer the responsibilities of a uniformed LAPD officer riding a department-issued motorcycle on public roads includes responding to emergencies, even when off duty and outside of the agency's jurisdiction.

This constitutes substantial evidence supporting the jury's finding the motorcyclist's conduct was "reasonably related to the kinds of tasks that a LAPD motorcycle was employed to perform." The motorcyclist's conduct in speeding past a motorist on an LAPD motorcycle while in uniform and then negligently kicking up debris on the road onto Newborn's vehicle was an " ' "outgrowth" ' " of the job of riding on a motorcycle to respond to emergencies. The risk of harm to a motorist like Newborn is inherent in the working environment of an LAPD motorcycle

---

[5] We do not conclude an LAPD officer is always acting within the scope of employment when in uniform, driving an LAPD vehicle, and carrying weapons. We conclude only that, under the facts presented at trial, the jury's finding on the scope of employment was supported by the evidence.

officer and ' " ' "may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer.' " ' " (*Musgrove, supra,* 82 Cal.App.5th at p. 708.)  That is, there is a "nexus" between the LAPD motorcyclist's tortious conduct (kicking up debris on the road while riding an LAPD motorcycle in uniform) and his employment as an LAPD officer.  (*Ibid.*)

For the same reasons, the LAPD motorcyclist's negligence was also "reasonably foreseeable in light of the employer's business or the employee's responsibilities."  In light of the duties the motorcyclist was hired to perform—riding an LAPD motorcycle on public roads to respond to emergencies—the harm to a motorist such as Newborn is reasonably foreseeable.  Officer Barr testified it was "[v]ery common" in his experience to hit debris while riding a motorcycle on the freeways in Southern California.  Officer Wilson testified motorcycle officers were trained to be aware of and avoid debris, and that they were also trained how to ride over debris safely.  In short, the LAPD motorcyclist's act of speeding and kicking up debris on the road " ' "is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." ' "  (*Musgrove, supra,* 82 Cal.App.5th at p. 708.)

Additionally, the three tort policy objectives undergirding enterprise liability support the jury's finding of respondeat superior liability against the City.  (*Mary M., supra,* 54 Cal.3d at p. 209; *accord, Perez, supra,* 75 Cal.App.5th at pp. 842-843.) First, the jury's finding helps to prevent recurrence of the tortious conduct because it may prompt law enforcement agencies, such as the LAPD, to provide more training to motorcycle officers about how to avoid debris on highways and to

22

impose stricter rules regarding speeding while using a city-provided motorcycle.[6]  Second, the jury's finding gives greater assurance of compensation to victims because Newborn was compensated for her injuries.  Third, the jury's finding helps to ensure that Newborn's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury.  Here, the community benefits from the LAPD's policy allowing officers to ride city-issued motorcycles when off duty because those officers are ready and available to address emergencies.  It is thus equitable to impose respondeat superior liability on the City for those officers' negligence while riding city-issued motorcycles on public highways.  (See also *Farmers*, *supra*, 11 Cal.4th at p. 1016.)

The City raises several opposing arguments.  First, it contends the motorcyclist could not have acted within the scope of employment because the motorcyclist was traveling outside of and in the opposite direction of the LAPD's jurisdiction, which is the City of Los Angeles.  According to the City, commuting home, whether on an LAPD motorcycle or not, is not something a police officer does " 'in the context of the particular enterprise' " of policing.  The geographical limitations of the LAPD's jurisdiction are not detrimental to Newborn's case in light of Officer Barr's testimony that the LAPD requires its officers to stop and render aid if they witness an accident.  In fact, Officer Barr and other fellow LAPD officers stopped to render aid to Newborn, even though they were off duty and outside LAPD jurisdiction.  Further, Penal Code section 830.1, subdivision (a)(3), extends the

---

[6]    We note the City does not argue the imposition of liability in this case will compel the LAPD to prohibit its officers from riding their motorcycles off duty.

authority of peace officers to encompass "any place in the state" for "a public offense committed . . . in the peace officer's presence, and with respect to which there is immediate danger to person or property, or of the escape of the perpetrator of the offense." (See also *Inouye, supra,* 30 Cal.App.4th at p. 284 [discussing broad scope of authority conferred upon peace officers].)

Next, the City argues that, if the motorcyclist was commuting home, we should conclude the motorcyclist was riding the LAPD motorcycle solely for personal benefit. The City's argument conflates the two tests in CACI No. 3720 (the risk-focused test and the foreseeability-focused test) with the benefit-and-custom-focused test. (See *Musgrove, supra,* 82 Cal.App.5th at pp. 708-710.) But the trial court did not instruct the jury on that latter test, and we need not consider it. (*Bullock, supra,* 159 Cal.App.4th at pp. 674-675 ["We review the sufficiency of the evidence to support a verdict under the law stated in the instructions given, rather than under some other law on which the jury was not instructed"].) Having met her burden to prove to the jury that the LAPD motorcyclist was acting in the scope of employment under the risk-focused test and/or the foreseeability-focused test, Newborn was not additionally required to prove the purpose of the motorcyclist's trip was for the benefit of the LAPD.

Third, the City argues the going-and-coming rule bars vicarious liability. But the City objected to Newborn's request to instruct the jury on the going-and-coming rule because it took the position that CACI No. 3725, which states the rule, did not apply to the facts of this case. The trial court accepted the City's argument and declined to instruct the jury with CACI No. 3725. When the jury asked during deliberations whether the motorcyclist was acting "in the scope of employment on the way

24

home," the court directed the jury to consider the evidence presented and did not instruct it on the going-and-coming rule. The City may not now assert this theory as a ground to affirm the JNOV. (See *M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 463 [judicial estoppel prohibits a party from taking inconsistent positions in the same or different judicial proceedings]; see also *Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569 [waiver is the intentional relinquishment or abandonment of a known right].) Although the City asserts it did not " 'waive the defense' " due to its position on CACI No. 3725, the City acknowledges CACI No. 3720 accounts for the going-and-coming rule. And, as stated, substantial evidence supports the jury's finding of scope of employment under CACI No. 3720.

C.     *New Trial*

The City asserts in its cross-appeal that the trial court erred by denying its new trial motion because the weight of the evidence was contrary to the jury's special verdict findings.[7] The City's contentions are unpersuasive.

1.     *Standard of Review*

"[T]he merits of a motion for a new trial denied by operation of law may be reviewed upon appeal in the same manner as if expressly denied by the court." (*Estate of Shepard*

---

[7]     The new trial motion was denied by operation of law after the trial court took it off calendar because it was rendered moot by the JNOV. (See Code Civ. Proc., § 660, subd. (c) [effect of failure to timely rule on motion for new trial "shall be a denial of the motion without further order of the court"].)

(1963) 221 Cal.App.2d 70, 73; accord, *Weisenburg v. Molina* (1976) 58 Cal.App.3d 478, 486.)  We generally review orders granting or denying a motion for a new trial for abuse of discretion.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859; *Denton v. City and County of San Francisco* (2017) 16 Cal.App.5th 779, 794.)  "Where a party claims . . . insufficient evidence, a 'new trial shall not be granted . . . , unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury *clearly should have* reached a different verdict or decision.'  [Citation and footnote omitted.]  'A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal.'  [Citations.]  'Accordingly, we can reverse the denial of a new trial motion based on insufficiency of the evidence . . . only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted.' "  (*Howell v. State Dept. of State Hospitals* (2024) 107 Cal.App.5th 143, 149 (*Howell*).)

Here, the trial court did not exercise its discretion "to reweigh this evidence in its exclusive role as the 13th juror."  (*Maroney v. Iacobsohn* (2015) 237 Cal.App.4th 473, 486.)  It instead took the new trial motion off calendar on mootness grounds after it granted the City's motion for JNOV.  The City's new trial motion challenged the sufficiency of the evidence and, on appeal, it contends the weight of the evidence did not support the jury's verdict.  Under these circumstances, the parties agree this court should review for substantial evidence.  (See *Maroney,* at p. 486; contra, *Reynosa v. Superior Court* (2024) 101 Cal.App.5th 967, 990, fn. 14 ["The substantial evidence

standard of review 'operates only where it can be presumed that the court has performed its function of weighing the evidence. If analysis of the record suggests the contrary, the rule should not be invoked' "].)

We need not determine whether the standard of review requires we look for substantial evidence or review the matter under the stricter " 'no substantial conflict in the evidence' " standard articulated in *Howell, supra,* 107 Cal.App.5th at page 149. The evidence in the record demonstrates the new trial motion was properly denied under either standard.

### 2. *LAPD Officer*

The City argues there was insufficient evidence supporting the jury's special verdict finding the motorcyclist was an LAPD officer. It cites "(1) an inadmissible hearsay statement from Officer Reynolds, but Officer Barr—the person who supposedly made the statement to Officer Reynolds—denied having made it, and (2) Ms. Newborn's trial testimony that the motorcycle had LAPD insignia on it, which was wholly inconsistent with her statement to the CHP, complaint, which also named the State, and deposition testimony."[8]

---

[8] The City also appears to rely on plaintiff's counsel's statement during a pretrial hearing that Newborn "couldn't recall specifically LAPD badging. She did recall officer's uniform was black, and the motorcycle that they were riding was the same one that the officer—arriving at the time." The jury did not consider these statements because they were not made in the jury's presence and arguments by counsel are not evidence. (*Villacorta v. Cemex Cement, Inc.* (2013) 221 Cal.App.4th 1425, 1433.)

The trial court, in its JNOV ruling, indicated this was sufficient evidence to support the jury's finding on this issue. It concluded there was "conflicting testimony" and "the jury was afforded the opportunity to weigh the testimonies of Officer Korey Reynolds, Officer Barr, and the plaintiff, assess credibility, and make reasonable inferences to support their conclusion reflected in the verdict that the front motorcyclist was an employee of the LAPD. That determination is not in contention in this [JNOV] motion." At trial, Newborn testified she could see the motorcyclist as the motorcyclist passed her, and she identified the motorcyclist as an LAPD officer. Newborn explained she commuted next to LAPD officers daily. On cross-examination, Newborn acknowledged she did not make that identification at her deposition and stated she did not remember what she said in the deposition. Although at trial and during his deposition, Officer Barr denied identifying the motorcyclist as an LAPD officer, Officer Reynolds testified at trial that he had noted in his report that Officer Barr stated at the scene the motorcyclist was an LAPD officer.

The court's evaluation of the evidence, although considered in connection with the JNOV motion, demonstrates there was a substantial conflict in the evidence, and the evidence did not compel the conclusion that a motion for new trial should have been granted. (*Howell, supra,* 107 Cal.App.5th at p. 149.) The jury was entitled to and did resolve that conflict. Further, even if Officer Reynolds's statement constituted inadmissible hearsay, Newborn's testimony at trial alone constitutes substantial evidence that the motorcyclist was an LAPD officer. (See *Catherine D. v. Dennis B.* (1990) 220 Cal.App.3d 922, 931 [appellate court should defer to jury's assessment of witness

28

credibility].) This substantial evidence supports the jury's finding the motorcyclist was an LAPD officer and does not compel the conclusion that a motion for new trial should have been granted.

### 3. *Scope of Employment*

For the same reasons we discussed in Part B, we conclude substantial evidence supports the jury's special verdict finding that the motorcyclist was acting within the scope of employment at the time of the accident. The evidence at trial established the motorcyclist was wearing an LAPD uniform, riding an LAPD motorcycle, and carrying firearms. Officer Barr testified LAPD motorcycle officers were allowed to take their motorcycles home and, even when off duty, officers were required to respond when an event required their assistance. Further, the duties of an LAPD motorcycle officer include riding a motorcycle to enforce traffic laws. This substantial evidence supports the jury's finding and does not compel the conclusion that a motion for new trial on the scope of employment should have been granted.

### 4. *Negligence*

The City also asserts insufficient evidence supports the jury's special verdict finding on negligence. According to the City, "[t]he accident could have happened without negligence because not every piece of debris on the freeway—especially something with the dimensions and coloring of a fractured leaf spring—can be seen and avoided." According to the City, neither accident reconstruction expert "could explain to the jury whether a reasonable motorcyclist exercising due care could have seen and avoided the fractured leaf spring—which was small and grayish

29

in color—while traveling at freeway speed" because the motorcyclist was unidentified and did not testify to the circumstances of the accident.

Here, the trial court instructed the jury that it "must" find negligence if it found (a) the motorcyclist violated Vehicle Code section 22350, the basic speed law, and (b) the violation was a substantial factor in bringing about the harm.[9] At trial, Newborn testified she was driving at approximately 65 miles per hour when the motorcyclists "zoomed" past her. Officer Barr estimated he was traveling at approximately 70 miles per hour, Newborn was traveling at approximately the same speed, and the motorcyclist was ahead of both of them. Officer Wilson testified LAPD motorcyclists were trained to spot and avoid debris on the road. Both Officer Barr and Officer Wilson testified debris was common on freeways, and Wilson stated he avoided the carpool lane for this reason. From this evidence, the jury could reasonably infer the motorcyclist was speeding and did not see the debris before the motorcycle kicked it into Newborn's windshield and caused her injuries. This is substantial evidence supporting the jury's special verdict finding the motorcyclist was negligent. (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) Further, this evidence does not compel the conclusion that the motion for new trial should have been granted. (*Howell, supra,* 107 Cal.App.5th at p. 149.)

---

[9] Vehicle Code section 22350 states: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

## DISPOSITION

The judgment in favor of the City is reversed.  On remand, the trial court shall vacate its order granting JNOV to the City, enter a new order denying the motion for JNOV and the motion for new trial, and reinstate the judgment in favor of Newborn consistent with the jury's verdict.


MARTINEZ, P. J.

We concur:


FEUER, J.


STONE, J.